In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2159

RYAN DEKEYSER, *et al.*,

*Plaintiffs-Appellees*,

*v.*

THYSSENKRUPP WAUPACA, INC., doing business as WAUPACA
FOUNDRY, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:08-cv-00488-WCG — **William C. Griesbach**, *Chief Judge*.

ARGUED APRIL 13, 2017 — DECIDED JUNE 22, 2017

Before POSNER, MANION, and KANNE, *Circuit Judges*.

POSNER, *Circuit Judge*. Before us is an appeal by the defendant (Waupaca for short) in a class action suit brought against it in a federal district court in Wisconsin on behalf of a number of the workers that it employs in six foundries that manufacture ductile and gray cast iron parts for use in the automotive and other industries. Four of the six foundries are located in Wisconsin, and the remaining two in Indiana

and Tennessee. The suit alleges that Waupaca violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, by its long-standing practice of not treating the time that its foundry workers spend changing clothes and showering on-site at the end of a foundry shift to be compensable "work" time. The Act entitles employees to a minimum wage for each hour they're "employ[ed]" and a premium wage (1.5 times their regular wage) for each hour they are "employ[ed]" beyond 40 hours in one work week. *Id.* §§ 206(a), 207(a). The Act defines "employ" to mean "to suffer or permit to work," *id.* § 203(g), but does not define "work." But an employee's activities at the beginning and end of a work shift may qualify as compensable "work" if necessitated by the nature of the work even if they are not required by a workplace policy, *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570–71 (7th Cir. 2013) (*DeKeyser I*)—in other words if the activities are "an integral and indispensable part of the principal activities for which [the workers] are employed." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

The plaintiffs allege that they end their shifts covered in a layer of "foundry dust," which can irritate the skin and cause lung disease if inhaled. Changing clothes and showering immediately after a shift, they argue, is indispensable to reducing the risk that foundry work poses to their health. The plaintiffs have also alleged violations of Wisconsin wage law.

The Fair Labor Standards Act authorizes collective actions by employees on behalf of "similarly situated" employees. 29 U.S.C. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, collective actions under the FLSA (which for the sake of simplicity we'll refer to as class actions—they are

very similar to the more familiar Rule 23 class actions) require would-be members of the collectivity to opt in to (i.e., voluntarily join) the class. See *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013). The district judge in this case ruled that he would "conditionally certify" the class since the plaintiffs showed a "reasonable basis" for believing that all the class members were similarly situated—and then, after discovery, upon a motion by the defendant for decertification the judge would determine whether the plaintiffs who had opted in were, in fact, similarly situated to the existing class members.

After the district court in 2008 conditionally certified the plaintiffs' FLSA collective-action class (consisting of current and former Waupaca foundry employees at any of the company's six foundries), several hundred current and former Waupaca employees from all three states opted in to the lawsuit. Waupaca responded by moving to decertify the class. At the same time the plaintiffs, deciding to proceed with only Waupaca's Wisconsin employees, moved to certify a Rule 23 class just for their Wisconsin state-law claims and so didn't oppose the decertification of those Indiana and Tennessee employees who had previously opted into the FSLA class. The district judge agreed that a class action on behalf of just the Wisconsin plaintiffs made sense and certified a class accordingly, denied Waupaca's request to decertify the entire FSLA class, and divided the FLSA class—which included employees from Indiana and Tennessee as well as from Wisconsin—into three subclasses, one for each state. The judge then severed the claims of the Indiana and Tennessee plaintiffs and transferred them to district courts in their respective states, on the ground that they could be more efficiently evaluated by such courts. Although this was

not a final order, Waupaca has appealed to us from it under Rule 23(f), which permits interlocutory appeals of class-certification decisions.

We analyze the two classes together. See *Espenscheid v. DirectSat USA, LLC*, *supra*, 705 F.3d at 772. The plaintiffs argue that Waupaca should be ordered to give the class members overtime pay and back pay for the time they have spent or are spending on decontamination, as by changing out of their work clothing and showering in the workplace locker rooms immediately after their shifts. Not only does the defendant not give these workers overtime pay (that is, pay equal to 1.5 times of their normal pay) for the time they spend on decontamination, it pays them nothing for this time; it doesn't even record the time, since it considers it time spent in noncompensable activity. Although it approves of the workers' taking the safety measures we've mentioned, it refuses to pay them for the time they spend taking them.

Originally the district judge held that it was not a violation of the Fair Labor Standards Act for Waupaca not to pay the workers for that time and so granted summary judgment in favor of the defendant. The plaintiffs appealed, however, and we reversed and remanded in *DeKeyser I*, *supra*, 735 F.3d at 572, pointing out that decontamination might indeed be required by the "nature of [the employees'] work," and that the district court had erred when it "ignored the 'sharp dispute' in the evidence as to the health effects of chemical exposure at Waupaca's foundries and the impact, if any, that showering and changing clothes would have on Waupaca workers." *Id.* at 570–71.

On remand the district judge ruled that the plaintiffs would prevail if they "convince the finder of fact that changing clothes and showering at work will significantly reduce the risk to the health of the employee."

Waupaca contends, though in tension with its encouraging all its foundry workers to take the precautions noted, that the plaintiffs haven't met Rule 23's requirement of identifying questions of fact common to the class because these precautions do not reduce the risks of foundry work to the health of all the workers by the same amount. Waupaca insists that to prevail a plaintiff must provide an individualized analysis of the chemicals that he is exposed to in the foundry and provide information about his personal medical background that will demonstrate that changing clothes and showering on-site would indeed significantly reduce the risk to his health.

The company describes the plaintiffs' evidence as "evidence demonstrating that [the plaintiffs'] claims could not be proven individually." But that misunderstands both the plaintiffs' evidence and their evidentiary burden. Back in the district court on remand from the earlier decision by our court, the plaintiffs hired as an expert witness a certified industrial hygienist named Thomas Armstrong. He presented evidence that changing out of one's work clothes and showering immediately after the standard 8-hour workday in a foundry reduce an employee's "foundry dust" skin contamination twelve-fold and by doing so considerably reduce the risk that such contamination poses to an employee's health. He opined that because foundry dust is distributed throughout the plant any foundry worker could reduce his risk by changing and showering immediately at the end of his shift.

Dr. Armstrong acknowledged that there wasn't enough in-
formation to quantify the precise risks associated with
changing and showering on-site, as opposed to at home
(particularly because ethics rules forbid testing of known
carcinogens on humans), but emphasized the reduction in
risk associated with using a "dirty side/clean side" shower
and locker-room system, by which he meant a configuration
that allows employees to shed their work clothes on one side
of the shower facility, shower in the middle, and dress in
street clothes on the other side. Such a system could hardly
be replicated in the household bathrooms of Waupaca em-
ployees, and it would reduce the risk of employees' carrying
contaminants such as silica dust and manganese into their
vehicles and homes, where they would endanger themselves
and their families, especially children and elders.

Waupaca's rebuttal, hinted at earlier, is that the health
risks must vary across workers because of different expo-
sures to chemicals and different medical histories of differ-
ent workers and that as a result some workers may derive no
significant health benefits from showering and changing
clothes right after the end of the work day in the foundry,
and therefore should not be entitled to be paid for the time
they spend doing so. But the company has not identified any
such workers. Nor has it challenged Dr. Armstrong's expert
testimony as inadmissible under *Daubert v. Merrell Dow
Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and his report im-
plies that the reduction in risk from conducting the decon-
tamination activities at work would dwarf any variation in
risk based on particular individual exposures or medical his-
tory. Whether a jury will credit Dr. Armstrong's report is a
separate question, but the district court did not err in con-
cluding that the plaintiffs have produced common evidence

tending to prove their common assertion, as Rule 23 and section 216(b) require.

One more issue remains to be considered. Waupaca argues that the district court erred by severing the FLSA claims of the plaintiffs from Indiana and Tennessee who had opted in to the lawsuit and transferring those claims to their respective home districts. Although the district court's plan to sever and transfer was laid out in the district court's class certification order, Rule 23(f) appeals are limited to "those issues related to [the] class certification decision." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 576 n. 2 (7th Cir. 2008). It's true that the non-Wisconsin plaintiffs had been *conditionally* certified, so in a sense the district court "decertified" them from the FLSA class. But Waupaca doesn't challenge that aspect of the order by arguing that the Indiana and Tennessee plaintiffs should be added back into the FSLA class; it simply wants the claims of the non-Wisconsin plaintiffs dismissed. The district court's plan to sever and transfer the non-Wisconsin plaintiffs to their home districts does not bear on the soundness of the class certification decision for the Wisconsin plaintiffs, so Waupaca cannot challenge it on a Rule 23(f) appeal, and did not obtain certification to appeal under 28 U.S.C. § 1292(b). See *Union Oil Co. of California v. John Brown E & C*, 121 F.3d 305, 311 (7th Cir. 1997). In any event there was nothing wrong with what the district court did—28 U.S.C. § 1404(a) gives a district court discretion to transfer a civil action to any other district or division where it might have been brought if the transfer is "for the convenience of parties and witnesses, [and] in the interest of justice."

Unfortunately the end of this protracted litigation, which began in June 2008—almost nine years ago—is not yet in sight. The district court has certified the plaintiff class, now limited to Wisconsin plaintiffs, under Rule 23 and section 216(b), but has yet to determine whether the time spent changing clothes and showering is indeed "work" time compensable under the FLSA or, if it is, what damages the members of the plaintiff class are entitled to, to compensate them for Waupaca's failure to have paid them for that time. Those determinations presumably will require a trial. For now we simply affirm the district court's certification decision.

AFFIRMED.

MANION, *Circuit Judge*, concurring. Before us on appeal is a district court order granting Rule 23 class certification for Wisconsin opt-ins at four Waupaca foundries located within the Eastern District of Wisconsin and partially granting the defendant's motion to decertify the FLSA class for opt-ins outside Wisconsin. I write separately for two reasons. First, I reiterate my concerns about permitting class certification in this case, and to examine the plaintiffs' legal theory which enables the Wisconsin claims to move forward on a class-wide basis. Second, I would like to caution against overreading today's majority as an endorsement of a novel sever-and-transfer procedure not before this court.

As I noted in dissent the last time this case was on appeal, and as the majority notes today, this is an old case. *DeKeyser v. Thyssenkrupp Waupaca*, 735 F.3d 568, 572 (7th Cir. 2013). Many employees have undoubtedly left Waupaca, and it will be extraordinarily difficult to identify which former employees spent how much, if any, uncompensated time donning and doffing. Individual cases would be hard enough to prove, and determining damages for an "average" worker will likely be next to impossible. This high evidentiary burden is compounded by the legal theory underlying the commonality of the class. Plaintiffs have a common claim under Rule 23 and the FLSA only to the extent that they were all potentially harmed by Waupaca foundries *so* inundated with cupola dust that "the only reasonable thing" for *each* worker to do, "given the potential of exposure to materials known to be dangerous, is to shower and change clothes at work." *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-0488 (E.D. Wis. March 31, 2016). As the district court further noted, "the jury or other factfinder will not be required to accept Plaintiff's expert's opinion with respect to the dangerousness

of working in Waupaca's foundries." The plaintiffs have thus committed themselves to the claim that all workers in the four Wisconsin plants were put in equal danger from the cupola dust. So whether a worker did a night shift on the factory floor or office work during the day, plaintiffs have raised class claims certifiable under the FLSA and Rule 23. I thus agree with the majority that the part of the district court order granting class certification for the Wisconsin claims was proper.[1]

But I caution against reading today's decision as an endorsement of the irregular procedure employed in the case cited by the plaintiffs, *Medina v. Happy's Pizza Franchise, LLC*, No. 10 C 3148 (N.D. Ill. Feb. 3, 2012). In this case, the district judge only partially decertified the Tennessee and Indiana groups of opt-ins because the theory of certification for those two subclasses will likely be substantially different from the class certified for the Wisconsin plaintiffs. Those two subclasses will have leave to amend their complaints. The single decertify-sever-and-transfer order employed in *Medina*, by contrast, would often result in the district judge stepping outside his role as an adjudicator between two parties. Here, FLSA subclasses are distinguished solely on the basis of the state residency of the plaintiffs.

Thus while it probably would be an abuse of discretion to partially decertify FLSA claims and *immediately* transfer those actions in a manner unsupported by the statute, that is not what is happening here. District judges retain "wide

---

[1] I do not think that Waupaca's compliance with OSHA's mandate that they simply recommend that their employees change clothes and shower is really not "in tension" with its central argument that doing so was not necessary to safely working at their foundries.

discretion to manage collective actions." *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). Further, civil actions may be transferred under 28 U.S.C. § 1404(a) for "the convenience of the parties and witnesses [where it is] in the interest of justice." In this case, there has not yet been a transfer order. These claims are going back to the district court, where an amended complaint will be filed for each subclass of claims. On remand, the district judge and defendants will have a first bite at the apple in determining whether there are sufficiently pleaded allegations to sustain a cause of action for this subclass, and whether the subclass is certifiable under the FLSA or Rule 23. If the district judge determines that these cases can go forward, or decides to certify or transfer these cases, there will be additional opportunities to appeal. All that is before us now is the partial decertification order: all we have decided is that the Tennessee and Indiana subclasses do not have sufficient claims in common with the Wisconsin subclass to proceed as a single action. We have not decided that the Tennessee or Indiana subclasses have sufficient internal coherence to *themselves* be certifiable as classes. Such a decision, best left for the Tennessee or Indiana district courts, is down the road.

Undoubtedly, this case is a mess, and has gone on for far too long. While I concur that it was not an abuse of discretion to certify the Wisconsin plaintiffs under Rule 23, or to partially decertify the Indiana and Tennessee plaintiffs under the FLSA, I caution against overreading today's majority as an endorsement of a novel procedure for avoiding local bars to relief.