In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-3053

PETER P. JONITES, *et al.*, individually and
on behalf of others similarly situated,

*Plaintiffs-Appellants*,

*v.*

EXELON CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 4234—**David H. Coar**, *Judge*.

ARGUED FEBRUARY 29, 2008—DECIDED APRIL 3, 2008

Before POSNER, ROVNER, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal requires us to analyze the relation between section 301(a) of the Labor Management Relations Act (Taft-Hartley), 29 U.S.C. § 185, which authorizes federal suits to enforce collective bargaining agreements, and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the federal minimum-wage and maximum-hour law. The plaintiffs represent a class (an "opt-in" class under 29 U.S.C. § 216(b); see *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004)) of more than a

thousand linemen and other hourly workers employed by Commonwealth Edison. (Affiliates of Com Ed are also defendants, but need not be discussed.) The plaintiffs claim that Com Ed has violated their rights under the FLSA by the way it implements its "call out" program and also by forcing them to work during their lunch break without paying them anything, let alone the overtime pay to which they are entitled if they are indeed working then, because the time allotted to those breaks, if added to the normal work week, exceeds 40 hours.

The district judge granted summary judgment for Com Ed. He ruled that the implementation of the call-out program does not violate the FLSA and that the plaintiffs' only remedy for the alleged mealtime violation is a proceeding to enforce their rights under the grievance and arbitration provisions of the collective bargaining agreement between the electrical workers union and Com Ed. The union did seek arbitration, but only with regard to the call-out program. It lost, and we rejected the union's challenge to the arbitrator's decision. *Local 15, International Brotherhood of Electrical Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779 (7th Cir. 2007).

Com Ed's "automated roster call out system"— "ARCOS"—notifies off-duty employees by a phone call to their home phone, beeper, or cellphone when additional manpower is needed on an emergency basis. An employee is not required to accept a call out, but if he fails to answer more than 50 percent of the calls or refuses to accept more than 35 percent of the call outs (other than because of excused absences, as when the worker is ill or on a scheduled vacation), he is disciplined. And if he continues to fall below either minimum he may be fired, in which event he is forbidden to work on Com Ed prop-

erty or projects even as the employee of an independent contractor.

An employee who accepts the call out travels first to his normal duty station and then to the work site. He is paid not only for the time working but also for the time it takes him to get to the site from his normal duty station and return there when he has finished working. But he is not paid for the time he spends commuting to and from his normal duty station.

Most call outs occur on weekends, but the frequency varies considerably among workers. A few are called as often as once every five-and-a-half days on average, and some others no more than once a month.

Com Ed has always had to call out workers for emergency repairs, and the fact that its call-out procedure is now automated is not what bothers the workers. What bothers them is that a cost-motivated reduction in the number of Com Ed's employees has led the company to insist on a much higher response rate than in the old days, when no response rate was specified and the average rate was below 20 percent and sometimes below 10 percent. The plaintiffs argue that the frequent call outs disrupt their home life and that therefore while waiting for a call they are working within the meaning of the Fair Labor Standards Act and thus are entitled to be paid the minimum wage for their waiting time. They do not press their claim to its logical conclusion—that they are entitled to be paid for working 168 hours a week (since an electrical outage or other emergency can occur at any time), with 128 of them constituting overtime—but instead argue vaguely that they should be paid for "some of the time" during which they are subject to call, with how much to be left to the trier of fact to determine. The deter-

mination would have to be made on a case-by-case basis since the call-out experience varies so among the workers.

In its suit to set aside the arbitrator's decision refusing to invalidate ARCOS, the union had argued unsuccessfully that the adoption of the program was outside the scope of the management-rights clause in the collective bargaining agreement. It had also argued that the program violated the Fair Labor Standards Act, but we held that that argument had been forfeited.

The arbitrator, so far as appears, did not decide whether the collective bargaining agreement places any limitations on ARCOS. The language of the agreement suggests that it does not; it states that "an employee ordered to remain at a specified location, awaiting a call for emergency work outside scheduled working hours, shall be paid the applicable [wage] rate until release." He is not required to remain at home, but only to leave word where he can be reached, which is easily done if he has a cellphone or a beeper, for then he has only to give Com Ed his number and be sure to have the instrument with him and turned on when he's not at home. But it is implicit in the agreement, as we shall see when we come to the mealtime question, that an employee is entitled to be paid whenever he *is* working; and the plaintiffs argue that even if they are not tied to their home when they are off duty, still their freedom is so far curtailed that they are "engaged [i.e., hired] to wait," and so are entitled to be paid.

The plaintiffs base their claim to off-duty pay on the Fair Labor Standards Act. Although all of them are represented in collective bargaining by the union that lost its suit to invalidate the arbitrator's decision, Com Ed does not contend that the claim is barred by res judicata despite the outcome of the union's suit, and it is right

not to contend that. E.g., *McDonald v. City of West Branch*, 466 U.S. 284, 291 (1984). Although the union represents all the workers in the bargaining unit, it is not their agent in the usual sense, since once a majority of the workers agree to be represented the minority is bound as well. 29 U.S.C. § 159(a). Nor does voting for a union evince consent to the union's bargaining away the workers' statutory rights. So we must decide whether the district court was right to find that the rules implementing ARCOS do not violate the Fair Labor Standards Act.

A regulation of the Labor Department the validity of which is not challenged provides that "an employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call.'" 29 C.F.R. § 785.17; see *Pabst v. Oklahoma Gas & Electric Co.*, 228 F.3d 1128, 1130-31 (10th Cir. 2000); cf. 29 C.F.R. § 553.221(c), (d). This may be true for some members of the plaintiffs' class, but obviously not for all or even most. The call-out procedure does not require that the worker stay at home or at any other designated location, but only that he be reachable by the company, and the regulation we just quoted goes on to provide that "an employee who is not required to remain on the employer's premises but is merely required to leave word at his home or with company officials where he may be reached is not working while on call." See *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944).

Of course the requirement that one accept 35 percent of one's call outs curtails a worker's freedom of action somewhat even if they are infrequent, because if he is only slightly above the floor he will be jeopardizing his job if he leaves town for the weekend. But that does not mean that he must stay in the house all weekend. He just

must stay within a two-hour radius of his normal duty station (for that is the time he is allowed for getting there if he accepts the call out). Is that such a hardship that it turns his waiting into working? We think not, in agreement with the case law on the issue, *Dinges v. Sacred Heart St. Mary's Hospitals, Inc.*, 164 F.3d 1056, 1058 (7th Cir. 1999); *Adair v. County Charter of Wayne*, 452 F.3d 482, 486-89 (6th Cir. 2006); *Ingram v. County of Bucks*, 144 F.3d 265, 268-70 (3d Cir. 1998); *Andrews v. Town of Skiatook*, 123 F.3d 1327, 1332 (10th Cir. 1997); compare *Cross v. Arkansas Forestry Commission*, 938 F.2d 912, 916-17 (8th Cir. 1991), though no case is exactly like this one.

Some 70 to 90 percent of the class members work the daytime shift and they claim that the half hour that the company allows them for lunch at the job site is really work time. They are forbidden to sleep during the lunch period and required (that's why they mustn't sleep) to be alert to trespassing at the site and theft of or damage to tools. They are not required to patrol the site, but merely, while sitting in the cab of their truck eating lunch, to keep a sharp eye out for trespassers. Being forbidden to sleep during a short lunch break cannot be too great a hardship, as it is hard to sleep and eat at the same time. The district judge, however, did not determine whether any of the class members are required to work during the lunch break, but instead, though with evident reluctance, ruled that the question was within the exclusive competence of an arbitrator to decide. He felt compelled to this result by our decision in *Leahy v. City of Chicago*, 96 F.3d 228 (7th Cir. 1996), which held that where a collective bargaining agreement provides that "all time in excess of the hours worked in a normal workday (8 hours) and the normal workweek (40 hours) shall be compensated at the rate of time-and-one-half,"

*id*. at 232, the determination of whether a worker "worked" during his lunch break was for the arbitrator to decide. The agreement in this case provides that "the basic workday shall normally consist of eight hours of work which shall be consecutive except when time out for a meal is scheduled." The question whether mealtime is really "time out" from "work" is a question of both contractual and statutory interpretation, and the court in *Leahy* ruled that it was for the arbitrator to determine whether the workers there were being made to work during their mealtime. "The FLSA requires no more." *Id*.

The dissenting judge in *Leahy* thought the majority was ruling that collective bargaining agreements preempt the Fair Labor Standards Act, a view unacceptable in light of *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981). Another panel of this court, in an opinion subsequent to *Leahy*, said (without mention of that decision) that a "union cannot consent *for* the employee [to waive his right to a judicial forum] by signing a collective bargaining agreement that consigns the enforcement of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement." *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir. 1997) (emphasis in original). (The machinery is "union-controlled" because it can be activated only by the union's filing a grievance on behalf of an aggrieved employee; as long as the union acts in good faith it is not required to file a grievance even if the aggrieved employee asks it to do so. *Vaca v. Sipes*, 386 U.S. 171, 191-92 (1967); *Matthews v. Milwaukee Area Local Postal Workers Union, AFL-CIO*, 495 F.3d 438, 441 (7th Cir. 2007).) In light of *Barrentine* and *Pryner*, the district judge in this case ruled that *Leahy* must be confined to issues of working at mealtime,

which is why he declined to apply the decision to the call-out claim.

The year after our decision in *Pryner*, the Supreme Court held in *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 80 (1998), that "a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" *might* be enforceable (not that it would be—the Court left the question open) provided it was "explicit." *Wright* was a discrimination case, but we can assume that its holding applies to other statutory rights, *O'Brien v. Town of Agawam*, 350 F.3d 279, 284-86 (1st Cir. 2003), and thus to *Leahy* and the present case.

The collective bargaining agreement provides that "should any dispute or difference arise between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement or with respect to job working conditions . . . , the dispute or difference shall be settled through the grievance procedure." This is not an "explicit" waiver of the right to sue under the Fair Labor Standards Act; it is little different from the corresponding language in the collective bargaining agreement in *Wright*. See 525 U.S. at 72-73. Most courts, moreover, have closed the question that the Supreme Court left open in that case (the "might" question) by holding, as we had done in *Pryner*, that while an individual worker can waive his right to a judicial remedy, a union cannot do so on his behalf. *Pyett v. Pennsylvania Building Co.*, 498 F.3d 88, 92-93 (2d Cir. 2007), certiorari granted under the name of *Penn Plaza LLC v. Pyett*, No. 07-581 (U.S. Feb. 19, 2008); *Rogers v. New York University*, 220 F.3d 73, 75-76 (2d Cir. 2000) (per curiam); *Plumley v. Southern Container, Inc.*, 303 F.3d 364,

373-74 (1st Cir. 2002); *Air Line Pilots Association, Int'l v. Northwest Airlines, Inc.*, 199 F.3d 477, 481-85 (D.C. Cir. 1999); contra, *Eastern Associated Coal Corp. v. Massey*, 373 F.3d 530, 533-34 (4th Cir. 2004). As we noted earlier, a union is not the freely chosen agent of every member of the bargaining unit (unless the vote for the union was unanimous); nor is consent to be represented in collective bargaining realistically the equivalent of consent to the union's waiving a worker's individual statutory rights.

*Leahy*, though, was a special case, as is this case, and in both cases the dismissal of the FLSA suit can be reconciled with *Wright*, *Pryner*, and the other cases that we have cited. The plaintiffs in *Leahy* wanted us to rule that "since some [police] officers on some days miss all or part of their meal periods" because they are required to work then, "all meal periods [are] compensable work." 96 F.3d at 232. The plaintiffs in this case want us to rule that because some Com Ed employees may sometimes do some work at lunch, all Com Ed employees are entitled to pay during their lunch break (overtime pay at that, because the half-hour lunch break is on top of an eight-hour workday). It is that argument, rather than the rejection of the same argument in *Leahy*, that is preposterous. As in *Leahy*, the plaintiff class here is hopelessly heterogeneous. We noted this in discussing the call-out claim; in regard to the mealtime claim, the abuse of the class-action device (or "collective action," as class suits under 29 U.S.C. § 216(b) are more commonly referred to) is even more egregious; the class includes workers who have no conceivable mealtime claim because they do not work the day shift. The plaintiffs and the other members of the class, or some of them, may have an FLSA claim that they could press in an individual suit, but the filing of this

class action suggests that they have no stomach for pro-
ceeding case by case. If they are unwilling to file individual
suits, or create homogeneous classes in order to bring
proper class actions, then, since an essential condition of
maintaining an FLSA class action—that the members of
the class be "similarly situated" to one another, 29 U.S.C.
§ 216(b)—is not satisfied, their only recourse is to ask
the union to file grievance proceedings under the col-
lective bargaining agreement. We assume that this route
remains open, since the mealtime issue was not raised in
the previous arbitration.

The union will be able to insist in any such arbitration
that the arbitrator comply with the Fair Labor Standards
Act. If he rules that a particular Com Ed worker is re-
quired to work during mealtimes, but that it is such easy
work that it is undeserving of the minimum wage, let alone
of overtime, his decision will be set aside for "manifest
disregard" of the law. *Wise v. Wachovia Securities, LLC*,
450 F.3d 265, 268-69 (7th Cir. 2006). "[W]here a gov-
erning legal principle is well defined, explicit, and clearly
applicable to the case, and where the arbitrator ignored
it after it was brought to the arbitrator's attention in a
way that assures that the arbitrator knew its controlling
nature," his disregard of it is "manifest." *Goldman v.
Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002).
For "an arbitrator may not direct the parties to violate
the law." *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d
577, 580 (7th Cir. 2001).

Furthermore, the collective bargaining agreement in this
case, unlike the ones in *Pryner* and *Wright*, sets forth a
standard for the arbitrator to apply that is materially
identical to the statutory standard: if an employer re-
quires an employee to work during meal time, then that
time is not "time out" from "work." Neither the statute

nor the collective bargaining agreement defines "work," but the Supreme Court has defined it as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); see *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 264-65 (5th Cir. 1998); *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 63-65 (2d Cir. 1997). We are given no reason to suppose that an arbitrator interpreting "work" in the collective bargaining agreement would understand the word to mean something different. If he finds that Com Ed does not require its linemen to work during lunch, that finding should be entitled to considerable weight in an FLSA case, should a proper one be brought. "Although the FLSA overrides contracts, in close cases it makes sense to let private arrangements endure—for the less flexible statutory approach has the potential to make everyone worse off." *Dinges v. Sacred Heart St. Mary's Hospitals, Inc., supra*, 164 F.3d at 1059. The arbitrator is likely to have a better understanding of the meaning of "work" in the context of a specific bargaining relationship than a court would have, cf. *Tice v. American Airlines, Inc.*, 288 F.3d 313, 317-18 (7th Cir. 2002), and so if the statutory and contractual standards are identical, the arbitrator's decision is entitled to consideration in a follow-on FLSA case. That will mitigate though not eliminate the two-bites-at-the-apple problem that arises when the standard in the collective bargaining agreement is the same as that in the Fair Labor Standards Act.

AFFIRMED.