# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 09-2020

DEBORAH A. ALVAREZ, et al.,

*Plaintiff-Appellants,*

*v.*

CITY OF CHICAGO,
a Municipal Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-cv-4639—**William J. Hibbler**, *Judge.*

No. 09-2021

ALEXANDER CARABALLO, et al.,

*Plaintiff-Appellants,*

*v.*

CITY OF CHICAGO,
a Municipal Corporation,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07-cv-2807—**William J. Hibbler**, *Judge.*

ARGUED NOVEMBER 4, 2009—DECIDED MAY 21, 2010

Before CUDAHY, FLAUM, and EVANS, *Circuit Judges.*

FLAUM, *Circuit Judge.* This is the consolidated appeal from the dismissal of two lawsuits brought by paramedics in Chicago. The plaintiffs claim that the City of Chicago systemically miscalculated their overtime pay in a total of ten different ways. Not all claims, however, are common to all plaintiffs. Relying on our decision in *Jonites v. Exelon Corp.*, 522 F.3d 721 (7th Cir. 2008), the district court dismissed the plaintiffs' collective action as "hopelessly heterogenous" and directed the plaintiffs to proceed through arbitration. Because the named plaintiffs have the right to proceed individually, we reverse the judgment of dismissal.

## I. Background

On August 28, 2006, a group of fifty-four paramedics employed by the Chicago Fire Department filed a two-count collective action against the City of Chicago, alleging that it willfully failed to properly compensate them for overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 (2006). *See Alvarez v. City of Chicago*, No. 06-cv-4639 (N.D. Ill.). The district court granted the *Alvarez* plaintiffs' motion to begin distributing notices of the action to prospective plaintiffs and provided them with 60 days in which to add additional plaintiffs.

More than three hundred additional plaintiffs opted in. On the City's motion, the district court dismissed several of them because the 60-day deadline had passed. Four of those plaintiffs, along with eight new plaintiffs,

then filed a new action. *See Caraballo v. City of Chicago*, No. 07-cv-2807 (N.D. Ill). The *Caraballo* plaintiffs assert the same claims as the *Alvarez* plaintiffs, but did not style their lawsuit as a collective action or seek class certification. On September 13, 2007, the district court consolidated *Alvarez* and *Caraballo*.

On June 6, 2008, the *Caraballo* plaintiffs moved for summary judgment. In their motion for summary judgment, the *Caraballo* plaintiffs identified a total of ten subclaims under FLSA. Briefly summarized, these claims are:

1. **Payments excluded from employees' "regular rate" for determining overtime compensation.** FLSA requires overtime at the rate of one-and-a-half times an employee's "regular rate," which is defined as "all remuneration for employment paid to . . . an employee," with several exceptions including "payments to an employee which are not made as compensation for his hours of employment." The paramedics identify six types of pay that they believe were wrongly excluded from their "regular rate."

a. **Duty availability pay.** This is a quarterly lump-sum payment of $175 made to all emergency medical services employees who work in 24-hour shifts pursuant to the collective bargaining agreement ("CBA").

b. **Fitness pay.** Also made pursuant to the CBA, this is a lump-sum payment of $350 to employees who meet certain physical qualifications measured

by a voluntary fitness test, which employees may take yearly.

c. **Specialty pay.** Specialty pay is provided under the CBA to paramedics who are also hazardous materials technicians and certified drivers. The compensation is equal to 5% of the employee's annual salary and is paid quarterly on a pro rata basis.

d. **Uniform pay.** Pursuant to the CBA, all paramedics receive two lump-sum payments during the course of a year "for cleaning and maintenance of dress uniforms, work clothes and protective clothing."

e. **Acting pay.** If a paramedic temporarily works in a higher rank, he receives additional compensation known as acting pay.

f. **Driving pay.** Paramedics receive additional compensation, known as driving pay, if they drive the ambulance.

2. **Treatment of continuing education time.** Plaintiffs make two arguments regarding the way the city handled time spent in continuing education. First, plaintiffs argue that the city improperly counted time spent in continuing education as "hours worked" for purposes of calculating the regular rate, since continuing education was compensated on an annual basis. Because the City calculated plaintiffs' regular rate (and, in turn, overtime rate) by dividing paramedics' salary by the number of hours worked, an increase in "hours worked" decreases the rate at which plaintiffs are compensated for overtime. Second, plaintiffs argue that the city could not use

payments made for continuing education as credits against overtime owed.

3. **Treatment of additional shifts.** The plaintiffs also argued that the City could not count hours spent working additional shifts as "hours worked" for purposes of determining the regular rate and that the City was not permitted to use them as credits against overtime owed.

4. **Human computation errors.** The plaintiffs argued that the city committed various human errors in calculating their overtime compensation.

5. **Salary method of computing weekly regular rates.** Plaintiffs argue that the city violated the FLSA by using the fixed salary method to determine regular rates.

The City filed a cross-motion for summary judgment against all parties, including the *Alvarez* plaintiffs. In addition to responding on the merits, defendant moved to decertify plaintiffs' collective action and dismiss their claims on the grounds that they were "hopelessly heterogenous." On March 20, 2009, the district court granted the city's motion for summary judgment against all plaintiffs, reasoning that the plaintiffs were not similarly situated because each plaintiff raised a different combination of the ten subclaims, such that the plaintiffs could not be readily divided into homogenous subgroups. The district court also noted that arbitration pursuant to the collective bargaining agreement, while not mandatory, might be a more efficient way to resolve the paramedics' claims. The court did not reach the merits of the ten subclaims raised by the plaintiffs. Instead, it dismissed

the claims of all plaintiffs, without prejudice, and directed them to pursue arbitration.

## II. Analysis

The Fair Labor Standards Act gives employees the right to bring their FLSA claims through a "collective action" on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b) (2006). A collective action is similar to, but distinct from, the typical class action brought pursuant to Fed. R. Civ. P. 23. The principle difference is that plaintiffs who wish to be included in a collective action must affirmatively opt-in to the suit by filing a written consent with the court, while the typical class action includes all potential plaintiffs that meet the class definition and do not opt-out.

The City—and the district court's opinion—relies heavily on our decision in *Jonites v. Exelon Corp.*, 522 F.3d 721 (7th Cir. 2008). In *Jonites*, we affirmed the dismissal of a collective action brought on behalf of more than a thousand lineman and other hourly workers employed by Commonwealth Edison. The *Jonites* plaintiffs alleged that two types of purportedly off-duty time were really compensable work. The first involved Com Ed's "call-out" policy, which required off-duty workers to respond to at least 35% of the calls from their employer for additional manpower on an emergency basis. The frequency of these call-outs varied widely among workers; some were called as often as once every five and a half days on average, and others no more than once a month. The employees took the position that they were entitled to be paid for "some of the time" during which they were

subject to call, with the amount to be determined by the trier of fact. The second challenge was to the lunch policy, which required workers at job sites to remain awake and be alert for trespassing and the theft of tools. However, only part of the class worked the daytime shift, to which the lunch policy applied. We held that as to both of these claims, the purported class was "hopelessly heterogenous" because liability would require significant individual fact-finding and many of the workers had no conceivable claim at all. *Id.* at 725-26. We further held that the individual plaintiffs must either file individual suits, create homogenous classes, or ask the union to file grievance proceedings under the collective bargaining agreement. *Id.* at 726. Because the purported class here is made up of plaintiffs who each have a different combination of subclaims, defendants argue that it is similarly heterogenous and was properly dismissed in favor of arbitration.

Appellants argue that this case is different from *Jonites* because the plaintiffs here appear to be similarly situated with regard to individual subclaims, but are heterogenous only because there are several different combinations of those subclaims. For example, whether any given paramedic is entitled to recover on the uniform pay theory depends on the legal question of whether such pay should have been included in the base rate, and the simple factual question of whether the particular paramedic received uniform pay. Instead of dismissing their claims as heterogenous, plaintiffs argue, the district court should have allowed them to split their claims into homogenous subclasses. *See, e.g.,* *Fravel v. County of Lake*, No. 2:07-cv-253, 2008 WL 2704744

(N.D. Ind. July 7, 2008) (allowing plaintiffs to proceed collectively and grouping the plaintiffs into four distinct subclasses depending on which theory of liability applied to them). Plaintiffs suggest that here, as in *Fravel*, "[r]esolving common questions as a class, even through the additional mechanism of sub-classes, remains inherently more efficient" than splitting the action into four separate collective actions or allowing individual claims by each plaintiff. *Id.* at *3.

The district court appeared to agree with the plaintiffs' characterization of their subclaims, noting that the City's liability to any particular plaintiff on any given subclaim turns only upon a single uniform policy and whether that policy impacted that particular plaintiff. However, the district court refused to adopt the *Fravel* approach, concluding that the number of subclaims made the plaintiffs "hopelessly heterogenous" and that arbitration would be more efficient.

A district court has wide discretion to manage collective actions. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 171 (1989). However, it appears that here the district court may have mistakenly read *Jonites* to forbid it from adopting a subclaim approach merely because the variety of subclaims renders the class "heterogenous." The problem with the *Jonites* class, however, was not that the plaintiffs had different subclaims, but rather that determining whether any given plaintiff had a viable claim depended on a detailed, fact-specific inquiry, and many plaintiffs lacked any conceivably viable claim altogether. *Jonites*, 522 F.3d at 723, 725-26; *see also Mooney*

*v. Aramco Services Co.*, 54 F.3d 1207, 1214-15 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (affirming decertification of collective action where employees who brought ADEA claim were subject to "vastly disparate employment situations" and defense was likely to center on purported reasonable factors other than age specific to each employee). If common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions.[1]

---

[1] There may also be cases where despite common questions as to liability, the remedy is so tailored to each particular plaintiff that a collective action is inappropriate. *Cf. Andrews v. Chevy Chase Bank*, 545 F.3d 570, 578 (7th Cir. 2008) (holding that Truth in Lending Act claims for rescission may not, as a matter of law, be brought as a class action). In *Andrews*, however, the statutory rescission remedy at issue required "unwinding the transaction in its entirety and . . . returning borrowers to the position they occupied prior to the loan agreement." *Id.* at 573. This individualized equitable remedy posed more significant obstacles to class resolution than the claims for damages here. If the paramedics in this litigation ultimately recover, their recovery will be determined by the application of mathematical formulae common to all class members, although the specific variables (number of hours worked, hourly wage, etc.) will vary from individual to individual. However, the individualized facts will likely come in the form of undisputed payroll and time records. Moreover, if necessary, Fed. R. Civ. P. 53(a)(1)(B)(ii)

(continued...)

Similarly, the district court mistakenly compared the efficiency of proceeding through subclaims only to the perceived efficiency of arbitration.[2] Plaintiffs have the right to proceed individually and may be able to form more tailored classes. *See Jonites*, 522 F.3d at 725 (noting that a collective bargaining agreement cannot preempt or waive a worker's right to a judicial remedy for FLSA violations). Thus, if it appears plaintiffs are prepared to proceed individually or through separate classes, the district court must consider whether these other mechanisms for judicial resolution of their claims are more or less efficient than a collective action comprised of various subclaims. *Cf. Fravel*, *supra*. In *Jonites*, the circumstances suggested that plaintiffs had "no stomach for proceeding case by case." *Id.* at 726. Here, the twelve *Caraballo* plaintiffs filed their complaint as individuals and moved for summary judgment as individuals. Indeed, there is nothing apparent from the record to indicate that the fifty-four named plaintiffs in *Alvarez* were unwilling to proceed individually. Yet the district court dismissed their claims in favor of arbitration without considering whether it was better to

---

[1] (...continued)

authorizes the district court to appoint a special master to "resolve a difficult computation of damages."

[2] The parties dispute whether arbitration of these FLSA claims is permissible under the terms of the paramedics' collective bargaining agreement. We need not reach this issue, as it has no bearing on whether the plaintiffs are in fact similarly situated or whether they have the right to proceed individually.

address sixty-five individual claims or one collective action comprised of ten subclaims.

Finally, the district court erred when it dismissed the claims of the named plaintiffs. When a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (citing *Mooney*, 54 F.3d at 1213-14); *see also Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008) (affirming decertification of an FLSA collective action, dismissal of the opt-in plaintiffs, and severance of each of the named plaintiffs into separate individual actions).[3] Defendants do not argue that arbitration under the collective bargaining agreement preempts litigating these

---

[3] The City argues that plaintiffs have waived this argument. But in response to the City's claim, in its cross-motion for summary judgment, that the collective action was "hopelessly heterogenous," the *Caraballo* plaintiffs argued that they were proceeding individually and that this argument was thus inapplicable to them. Because of the course of litigation below, plaintiffs did not have an opportunity to present this argument more fully. With only the *Caraballo* plaintiffs' motion for summary judgment before it, the district court addressed both the *Alvarez* and *Caraballo* actions, deemed the *Caraballo* plaintiffs to be proceeding as a class, and not only decertified both classes but entered its judgment of dismissal without prejudice that same day. While plaintiffs do not argue that treating *Caraballo* as a collective action was error (indeed, it appears that at least one plaintiff attempted to opt in to the *Caraballo* action), this procedural posture does explain why the right to proceed individually was not addressed below.

issues in federal court. Plaintiffs are entitled, at minimum, to pursue their claims individually. Whether they are permitted to do so in one action or several is committed to the sound discretion of the district court, but misjoinder of parties is never a ground for dismissing an action. *See* Fed. R. Civ. P. 21. We therefore reverse the district court's dismissal of the named plaintiffs' claims in both the *Alvarez* and *Caraballo* actions.

Sifting through the subclaims of each of the myriad plaintiffs is an unenviable task. But plaintiffs are nonetheless entitled to their day in court. Moreover, it appears that here, common questions predominate with regard to each theory of liability. The parties have already filed cross-motions for summary judgment on the merits of these common questions. After the district court determines the validity of these subclaims, calculation of each plainti*ff*'s award (if any) will be largely mechanical. On remand, given that the claims of the named plaintiffs will still be before it, the district court should consider whether a collective action might be the most efficient judicial resolution of this matter after all.

### III. Conclusion

We REVERSE the district court's dismissal of the named plaintiffs' claims and REMAND for proceedings consistent with this opinion.