IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

**FILED**
**November 17, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 19-0459

AC&S INC.,
Defendant Below, Petitioner,

v.

JEFFREY R. GEORGE,
Plaintiff Below, Respondent.

Appeal from the Circuit Court of Putnam County
The Honorable Phillip M. Stowers, Judge
Civil Action No. 17-C-196

AFFIRMED

Submitted:  October 7, 2020
Filed:  November 17, 2020

Brian J. Moore, Esq.
Arie M. Spitz, Esq.
Dinsmore & Shohl LLP
Charleston, West Virginia
Counsel for Petitioner

W. Jesse Forbes, Esq.
Forbes Law Offices PLLC
Charleston, West Virginia
and
Todd S. Bailess, Esq.
Rodney A. Smith, Esq.
Bailess Smith PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "An order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine."  Syllabus Point 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

2.      "When an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is *de novo*."  Syllabus Point 1, *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

3.      "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement."  Syllabus Point 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

4.      A collective bargaining agreement may require an employee to resolve his or her statutory or common law employment discrimination claims through grievance and arbitration, so long as it does so in clear and unmistakable terms.

WALKER, Justice:

After his employment with AC&S Inc. (AC&S) was terminated in April 2016, Jeffrey R. George filed this case claiming unlawful employment discrimination and retaliation. AC&S moved to dismiss and to compel arbitration of Mr. George's claims under the terms of the collective bargaining agreement (CBA) in place at the workplace. In May 2019, the circuit court denied the motion and AC&S appealed on the grounds that the arbitration clause of the CBA was a waiver of Mr. George's individual right to pursue his statutory and common law claims outside of arbitration. Although the CBA here required arbitration of all disputes arising under the CBA, it did not include a "clear and unmistakable" waiver of Mr. George's individual right to pursue his statutory and common law employment discrimination claims in state court. So, the circuit court correctly denied AC&S's motion to dismiss and to compel arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. George was employed by AC&S as a chemical operator in Nitro, West Virginia. He was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO (union), which is the sole agent of all bargaining unit employees at AC&S's Nitro facility. In September 2014, the union and AC&S entered into a CBA that established the terms and conditions of employment for covered employees.

1

The CBA contains two arbitration provisions. Article X, Section 2, of the CBA provides:

> It is expressly understood and agreed by all parties to this Agreement, the Employer, the Union, and Bargaining Unit employees that the sole remedy for disputes regarding disciplinary actions taken by the Employer against employees covered by this Agreement shall be in accordance with **ARTICLE XI, GRIEVANCE AND ARBITRATION PROCEDURES,** of this Agreement.

And Article XI, Section 1, of the CBA provides general language requiring that

> all complaints, disputes, controversies, or grievances arising between the Employer and . . . [covered employees], which involve[] only questions of interpretation or application of any provisions of this Agreement shall be adjusted and resolved . . . in the manner provided by this **ARTICLE, ARTICLE XI, GRIEVANCE AND ARBITRATION PROCEDURES.**

On April 26, 2016, AC&S terminated Mr. George's employment for alleged violation of safety rules and insubordination. Mr. George believes his termination was in retaliation for filing a workers' compensation claim and because he was perceived as having an impairment or being disabled.

2

The union filed a grievance on Mr. George's behalf the day he was terminated.[1]  AC&S denied Mr. George's grievance and neither he nor the union on his behalf pursued arbitration under the CBA.

In October 2017, Mr. George filed this lawsuit in circuit court alleging that he was wrongfully terminated in violation of the West Virginia Workers Compensation Act,[2] the West Virginia Human Rights Act,[3] and substantial public policies of the State of West Virginia.[4]  AC&S responded by moving to dismiss and compel arbitration, arguing that the arbitration clause in the CBA governing Mr. George's employment mandated arbitration of his claims.  After Mr. George filed a response, the circuit court held a hearing on the motion.

---

[1] A one-page "Grievance Report" form used to initiate grievances directs employees (or their representative) to describe the nature of the grievance and specifically what provisions of the CBA they allege were violated.  Mr. George's grievance was described as follows:  "On or about 4/26/2016 the Company terminated the above named grievant without cause."  As for "Agreement Violation" on the form, Mr. George alleged that AC&S violated "[Article] II.  Employer's [sic] rights and all other areas of the contract that may pertain as well as any applicable state or federal laws that may apply."  As for the form's designation of "Settlement requested in Grievance," Mr. George requested: "For the grievant to be returned to work and made whole."

[2] W. Va. Code §§ 23-5A-1 to -4 (1990).

[3] W. Va. Code §§ 5-11-1 to -20 (2016).

[4] *See Harless v. First Nat'l Bank in Fairmont*, 162 W. Va. 116, 246 S.E.2d 270 (1978).

On May 7, 2019, the circuit court denied AC&S's motion. It found that Mr. George's individual employment discrimination claims fell outside the scope of the CBA. Relying on the United States Supreme Court opinions of *Wright v. Universal Maritime Corp.*,[5] and *14 Penn Plaza LLC v. Pyett*,[6] the circuit court stated that "[i]n order to compel an employment discrimination claim pursuant to an arbitration agreement contained in a CBA, the requirement to arbitrate such claims must be particularly clear such that the waiver of a judicial forum is clear and unmistakable." The circuit court applied the test set forth by the Fourth Circuit Court of Appeals in *Carson v. Giant Food, Inc.*,[7] which stated that the "clear and unmistakable" waiver standard can be satisfied in the following two ways:

> The first is the most straightforward. It simply involves drafting an explicit arbitration clause. Under this approach, the CBA must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all federal causes of action arising out of their employment. Such a clear arbitration clause will suffice to bind the parties to arbitrate claims arising under a host of federal statutes, including Title VII, 42 U.S.C. § 1981, the ADEA, and the ADA.
>
> The second approach is applicable when the arbitration clause is not so clear. General arbitration clauses, such as those referring to "all disputes" or "all disputes concerning the interpretation of the agreement," taken alone do not meet the clear and unmistakable requirement of [*Wright*]. When the parties use such broad but nonspecific language in the arbitration clause, they must include an "explicit incorporation

---

[5] 525 U.S. 70 (1998).

[6] 556 U.S. 247 (2009).

[7] 175 F.3d 325 (4th Cir. 1999).

of statutory antidiscrimination requirements" elsewhere in the contract. . . . If another provision, like a nondiscrimination clause, makes it unmistakably clear that the discrimination statutes at issue are part of the agreement, employees will be bound to arbitrate their federal claims.[8]

The circuit court found that the CBA met neither of these approaches. The CBA contains no language that 1) incorporates the statutory or common law claims Mr. George is asserting, or 2) requires union members to submit to arbitration "all causes of action" arising from their employment, coupled with a nondiscrimination clause. So, the CBA required arbitration of any contractual disputes regarding disciplinary actions but not arbitration of Mr. George's employment discrimination claims. Finally, the circuit court rejected AC&S's argument that Mr. George's "course of conduct" in filing a union grievance regarding his termination demonstrated that he understood his claims must be pursued through arbitration.

## II. STANDARD OF REVIEW

AC&S appeals the circuit court's denial of its motion to dismiss and compel arbitration. In *Credit Acceptance Corporation v. Front*,[9] we held that "[a]n order denying a motion to compel arbitration is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." And, "[w]hen an appeal from an order denying a motion to dismiss and to compel arbitration is properly before this Court, our review is

---

[8] *Carson*, 175 F.3d at 331-32.

[9] 231 W. Va. 518, 745 S.E.2d 556 (2013), syl. pt. 1.

5

*de novo*."[10] Our review is also plenary to the extent our analysis requires us to examine the CBA.[11]

# III. ANALYSIS

AC&S contends that the circuit court should have granted its motion to dismiss and to compel arbitration of Mr. George's employment-related claims. Our consideration is necessarily limited in scope. We begin by observing that

> [w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act [FAA], 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.[12]

The question here is not whether the CBA includes an arbitration agreement that pertains to Mr. George's employment; it undisputedly does. Instead, the primary issue is whether his statutory and common law employment discrimination claims fall within the substantive scope of the CBA.

---

[10] Syl. Pt. 1, *W.Va. CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 238 W. Va. 465, 796 S.E.2d 574 (2017).

[11] *Zimmerer v. Romano*, 223 W. Va. 769, 777, 679 S.E.2d 601, 609 (2009) ("[W]e apply a *de novo* standard of review to [a] circuit court's interpretation of [a] contract.").

[12] Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

In this appeal, AC&S argues that 1) the circuit court should not have applied the "clear and unmistakable" waiver standard when determining the validity of the arbitration clause; 2) alternatively, the arbitration clause meets that standard; and 3) the circuit court erred when it failed to take Mr. George's course of conduct into account. Mr. George counters that the circuit court did not err in applying the "clear and unmistakable" waiver standard because *Wright* remains binding precedent, and the CBA does not meet that standard. Mr. George also states that the broadest conclusion that can be drawn from his decision to file a grievance initially is that he intended to arbitrate contractual violations of the CBA.

### A. "Clear and Unmistakable" Waiver Standard

Normally, the inclusion of an arbitration clause in a CBA creates a "presumption of arbitrability" as to disputes that arise between the parties to that agreement.[13] There is an exception to that rule where a dispute ultimately concerns not the application or interpretation of the CBA, but the meaning of a statute; *Wright* requires a court to determine whether, without use of the presumption, an "ordinary textual analysis of a CBA show[s] that matters which go beyond the interpretation and application of contract terms are subject to arbitration[.]"[14] In *Wright*, the Supreme Court emphasized

---

[13] *See AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986).

[14] 525 U.S. at 79.

that a waiver of employee rights to a judicial forum must be "clear and unmistakable."[15]
In addition, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."[16]

There are advantages and disadvantages to the employer and the union in negotiating an arbitration clause in a CBA that reaches employees' individual statutory rights. With those considerations in mind, both parties—who are highly sophisticated at negotiating the terms of a CBA—must balance those interests.[17] If the parties reach agreement on this issue, there should be no ambiguities surrounding the waiver provision incorporated into the CBA. As mandated by the Supreme Court in *Wright* and *14 Penn Plaza*, an agreement to waive employees' rights to a judicial forum for individual statutory claims must be "clear and unmistakable" in the language of the CBA.

---

[15] 525 U.S. at 80.

[16] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985).

[17] *See* Floyd D. Weatherspoon, *Incorporating Mandatory Arbitration Employment Clauses into Collective Bargaining Agreements: Challenges and Benefits to the Employer and the Union*, 38 Del. J. Corp. L. 1025, 1029 (2014).

AC&S first argues that the circuit court should not have applied the "clear and unmistakable" waiver standard pronounced in *Wright* [18] when determining the "validity" of the arbitration clause. AC&S maintains this heightened standard runs afoul of the more recent case of *Epic Systems Corp. v. Lewis*,[19] where the Supreme Court stated that arbitration agreements cannot be invalidated by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."[20] AC&S reasons that *Wright*'s standard is premised on the clause's relation to arbitration and is exactly the sort of defense that is prohibited under *Epic Systems*.

AC&S's reliance on *Epic Systems* is misplaced; that case did not involve collectively bargained waivers of employees' rights to a judicial forum for employment discrimination claims. *Epic Systems* addressed whether employer-employee agreements that contain class and collective action waivers that provide employment disputes are to be resolved by individualized arbitration were invalid under the National Labor Relations Act

---

[18] 525 U.S. 70.

[19] 138 S.Ct. 1612 (2018).

[20] *Id*. at 1622 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

(NLRA).[21] The Supreme Court held that such agreements do not violate the NLRA and that the agreements must be enforced as written pursuant to the FAA.[22]

In this case, the "clear and unmistakable" waiver standard was not used to determine the *validity* of the arbitration clause; the circuit court found the arbitration clause was valid and enforceable with regard to Mr. George's contractual rights under the CBA. Rather, the circuit court used this standard to determine the *scope* of the CBA's arbitration clause.[23] So, *Epic Systems* is not relevant to our analysis because the "clear and unmistakable" waiver standard "does not reflect *disfavor* of union-negotiated arbitration agreements."[24] Rather, this standard ensures that courts do not inadvertently interpret a CBA as waiving employees' individual rights to bring employment discrimination claims in court when examining general arbitration clauses that the parties intended to reach only to contractual disputes under the CBA.[25]

---

[21] 138 S.Ct. at 1619-21, 1632.

[22] *Id.*

[23] *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222-23 (2d Cir. 2019) ("[T]he 'clear and unmistakable' standard is applicable only to the question whether a union has waived its members' right to bring statutory claims in court, not to the initial question whether an arbitration agreement exists at all.").

[24] *Abdullayeva*, 928 F.3d at 223.

[25] *See e.g.*, *Wright*, 525 U.S. at 80 (stating that clause mandating arbitration of "matters under dispute" did not waive right to bring claims of employment discrimination (continued . . .)

AC&S further argues that *Wright*'s "heightened standard" with respect to arbitration clauses in CBAs was based on the reasoning in *Alexander v. Gardner-Denver Co.*,[26] and that Supreme Court jurisprudence with respect to arbitration has evolved to the point that *Gardner-Denver* is ripe for overruling. [27] To explain why this argument is flawed, we discuss *Gardner-Denver* in the context of the two cases that guide our analysis, *Wright* and *14 Penn Plaza*.

In *Gardner-Denver*, the plaintiff brought an action under Title VII of the Civil Rights Act of 1964,[28] and the Supreme Court was tasked with deciding "under what circumstances, if any, an employee's statutory right to a trial de novo under Title VII may be foreclosed by prior submission of his claim to final arbitration under the

---

in court, because such an ambiguous clause "could be understood to mean matters in dispute under the contract").

[26] 415 U.S. 36 (1974).

[27] AC&S points to the following dicta in a footnote from *14 Penn Plaza* for this proposition:

> Because today's decision does not contradict the holding of *Gardner-Denver*, we need not resolve the *stare decisis* concerns raised by the dissenting opinions. . . . But given the development of this Court's arbitration jurisprudence in the intervening years, . . . *Gardner-Denver* would appear to be a strong candidate for overruling *if* the dissents' broad view of its holding . . . were correct.

*14 Penn Plaza*, 556 U.S. at 264 n.8 (emphasis added). For the reasons discussed below, this footnote is not relevant to the issues before this Court.

[28] 42 U.S.C. §§ 2000e to 2000e-17.

nondiscrimination clause of a collective-bargaining agreement."[29]  The CBA at issue stated

that "[n]o employee will be discharged, suspended or given a written warning notice except

for just cause," and it "contained a broad arbitration clause covering differences aris[ing]

between the Company and the Union as to the meaning and application of the provisions

of [the CBA] and any trouble arising in the plant."[30]  The Supreme Court observed that the

lower courts "evidently thought that [the result] was dictated by notions of election of

remedies and waiver and by the federal policy favoring arbitration of labor disputes[.]."[31]

But the Court disagreed and stated that the doctrine of election of remedies had no

application in the context of the case because submitting a grievance to arbitration

vindicated a contractual right whereas filing a lawsuit asserted an "independent statutory

right[.]"[32]

Finding that in enacting Title VII, Congress granted individual employees a

nonwaivable, public law right that was separate and distinct from rights created through

collective bargaining, *Gardner-Denver* held that an employee "does not forfeit his right to

a judicial forum for claimed discriminatory discharge in violation of Title VII" if he or she

---

[29] *Gardner-Denver*, 415 U.S. at 38.

[30] *Id.* at 39-40 (internal quotation marks omitted).

[31] *Id.* at 45-46.

[32] *Id.* at 49-50.

first pursues a grievance to final arbitration under the nondiscrimination clause of a CBA.[33] In addition to *Gardner-Denver*'s core holding, the Court expressed doubts about the competence of arbitrators to evaluate and decide statutory claims, and about the validity of union-negotiated waivers of employees' federal forum rights for statutory claims.[34]

Over twenty years later, the Supreme Court was confronted with a similar issue in *Wright*, when it addressed whether a general arbitration clause in a CBA required an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act of 1990[35] (ADA).[36] The Supreme Court held that any waiver of a judicial forum for an employee's statutory rights in a CBA would have to be "clear and unmistakable."[37] With respect to the particular CBA at issue in *Wright*, the Court observed that it contained only a general arbitration provision, providing for "arbitration of matters

---

[33] *Id*. at 49.

[34] *Id*. at 51-52.

[35] 42 U.S.C. §§ 12101 *et seq*.

[36] *Wright,* 525 U.S. at 72.

[37] *Id.* at 80. ("[T]he right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA.").

under dispute," and, thus, contained no sufficiently "clear and unmistakable" waiver of statutory rights under the ADA.[38]

In *Wright*, the Supreme Court stated that it did not reach the question of whether a "clear and unmistakable" waiver "would be enforceable."[39]  But it squarely addressed that issue in *14 Penn Plaza*[40] and sanctioned the use of a CBA's mandatory arbitration provisions covering employee's individual statutory claims.  In *14 Penn Plaza*, the plaintiffs submitted their employment discrimination claims to arbitration pursuant to the CBA between the parties, and filed a claim for employment discrimination in federal court under the Age Discrimination in Employment Act of 1967.[41]  The Court held that the explicit language in the CBA was sufficient to meet the test set out in *Wright*; the CBA "clearly and unmistakably" required the parties to arbitrate the statutory age discrimination claims.[42]

---

[38] *Id*.

[39] *Id*. at 82.

[40] 556 U.S. 247.

[41] 29 U.S.C. §§ 621 to 634.

[42] The CBA between the parties explicitly provided:

> NO DISCRIMINATION. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership,

(continued . . .)

14

In *14 Penn Plaza*, the Supreme Court went on to state that *Gardner-Denver* did not control the outcome when the CBA's arbitration provision expressly covered both statutory and contractual discrimination claims. It noted since the employees in *Gardner-Denver* had not agreed to arbitrate their statutory claims, and the arbitrators were not authorized to resolve such claims, the arbitration in those cases did not preclude subsequent statutory actions in court.[43]

The dissenting justices in *14 Penn Plaza* read *Gardner-Denver* broadly to hold that "an individual's statutory right of freedom from discrimination and access to court for enforcement were beyond a union's power to waive."[44] But the majority in *14 Penn Plaza* disagreed and found that the ultimate holding in *Gardner-Denver* did not involve the issue of enforceability of an agreement to arbitrate statutory claims, but rather the different

---

or any characteristic protected by law, *including, but not limited to, claims made pursuant to* Title VII of the Civil Rights Act, the Americans with Disabilities Act, *the Age Discrimination in Employment Act,* the New York State Human Rights Law, the New York City Human Rights Code, . . . or any other similar laws, rules, or regulations. All such claims shall be subject to the grievance and arbitration procedures (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination.

*14 Penn Plaza,* 556 U.S. at 252 (emphasis added).

[43] *14 Penn Plaza*, 556 U.S. at 264.

[44] *14 Penn Plaza*, 556 U.S. at 280 (Souter, J., dissenting, joined by J. Stevens, J. Ginsburg, and J. Breyer).

15

issue of "whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims."[45] The Court disavowed *Gardner-Denver*'s anti-arbitration dicta language as misguided and stated, "[t]hat skepticism . . . rested on a misconceived view of arbitration that this Court has since abandoned."[46]

With this background, we quickly discern that any disagreement about the breadth of *Gardner-Denver*'s holding does not involve the issue before this Court. Mr. George never argued that his union lacked authority to negotiate a waiver of a judicial forum for his individual statutory rights. And the Supreme Court consistently applied the "clear and unmistakable" in *Gardner-Denver*, *Wright*, and *14 Penn Plaza*. So we decline AC&S's invitation to rule otherwise.

This Court has not addressed whether the "clear and unmistakable" waiver standard applies to the arbitrability of state law employment discrimination claims when the arbitration clause is in a CBA.[47] We are mindful that in "deciding disputes over the

---

[45] *14 Penn Plaza*, 556 U.S. at 264.

[46] *14 Penn Plaza*, 556 U.S. at 265.

[47] We have held that an arbitration clause in an employment contract entered directly between an employer and employee (not in a CBA) is enforceable when it specifically addressed the statutory claims at issue. For instance, in *Hampden Coal, LLC v. Varney*, 240 W. Va. 284, 810 S.E.2d 286 (2018), this Court reversed the lower court's decision and remanded for entry of an order dismissing the civil action and compelling arbitration of the employee's deliberate intent and unlawful discrimination claims against his employer and supervisor. We found that those claims fell within the scope of the specific language of (continued . . .)

16

interpretation of [CBAs], state contract law must yield to the developing federal common law, lest common terms in bargaining agreements be given different and potentially inconsistent interpretations in different jurisdictions."[48] And "[t]he Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms."[49]

Applying these principles to the matter before us, we hereby hold that a collective bargaining agreement may require an employee to resolve his or her statutory or common law employment discrimination claims through grievance and arbitration, so long as it does so in clear and unmistakable terms.

The Supreme Court has not yet defined the contours of this standard. Some federal circuit courts have adopted a bright-line approach for identifying "clear and

---

the arbitration agreement. That agreement explicitly stated the parties' mutual assent to arbitrate:

> all disputes or claims of any kind includ[ing] but [ ] not limited to claims of unlawful discrimination, retaliation or harassment based upon race, national origin, ancestry, disability, religion, sex, age, workers' compensation claims or history, veteran's status, or any other unlawful reason, and all other claims relating to employment or termination from employment. This shall also include claims for wages or other compensation due, claims for breach of any contract, tort claims or claims based on public policy.

*Id*. at 288-89, 810 S.E.2d at 290-91.

[48] *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994).

[49] *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019).

unmistakable" waivers when a CBA "explicitly mentions employee rights under [the relevant statute] or any other federal anti-discrimination statute[.]"[50]  In our view, this standard is satisfied when the CBA reflects that the parties agreed to waive an employee's right to a judicial forum for statutory/common law discrimination claims using clear and unmistakable language.[51]

### B.  The CBA Does Not Contain a Clear and Unmistakable Waiver of a Judicial Forum for Employment Discrimination Claims

AC&S argues next that even if this Court adopts the "clear and unmistakable" waiver standard, the CBA at issue here is sufficiently explicit to waive a

---

[50] *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 9 (1ˢᵗ Cir. 1999).  The Sixth and Seventh Circuits endorse this approach.  *See, e.g.*, *Bratten v. SSI Servs., Inc.*, 185 F.3d 625, 631 (6th Cir. 1999) (explaining that "a statute must specifically be mentioned in a [CBA] for it to even approach" the clear and unmistakable-waiver standard); *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1135 (7th Cir. 2017) (holding that a CBA did not clearly and unmistakably waive a judicial forum for rights under the Fair Labor Standards Act (FLSA) when the arbitration provision did not reference the FLSA).  The Second, Fifth, and Eighth Circuits also embrace this approach. *See, e.g.*, *Lawrence v. Sol G. Atlas Realty Co.*, 841 F.3d 81, 84 (2d Cir. 2016); *Ibarra v. UPS*, 695 F.3d 354, 360 (5th Cir. 2012); *cf. Abdullayeva*, 928 F.3d at 223-24 (finding a clear and unmistakable waiver when the CBA required arbitration of claims under specifically listed statutes); *Thompson v. Air Transp. Int'l Ltd. Liab. Co.*, 664 F.3d 723, 726 (8th Cir. 2011) (accepting, without comment, the plaintiff's concession that the arbitration provision covering employment discrimination "alleged to be violations of state or federal law" was a clear and unmistakable waiver).

[51] *See* Syl. Pt. 1, *State ex rel. U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 752 S.E.2d 586 (2013) ("'Under the Federal Arbitration Act, 9 U.S.C. § 2, parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate.  An agreement to arbitrate will not be extended by construction or implication.' Syllabus point 10, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled on other grounds by Marmet Health Care Center, Inc. v. Brown*, [565] U.S. [530], 132 S.Ct. 1201, 182 L.Ed.2d 42 (2012) (per curiam).").

judicial forum for employment discrimination claims.  AC&S contends the CBA is unique in that it contains two arbitration provisions: a specific, self-contained arbitration clause that only pertains to disputes regarding discipline, and a general arbitration clause pertaining to interpretation of the CBA.  AC&S states that the first arbitration clause applies to Mr. George's wrongful termination allegations—because termination was a disciplinary action—and this clause, Article X, Section 2, is a "clear and unmistakable" waiver.  We disagree.

Article X, Section 2 of the CBA provides that "the sole remedy for disputes regarding disciplinary actions taken by the Employer against employees covered by this Agreement shall be in accordance with **ARTICLE XI, GRIEVANCE AND ARBITRATION PROCEDURES**[.]"  Clearly, Article X is not self-contained; it directs us to Article XI, the CBA's section outlining the grievance and arbitration procedures.  And Article XI, Section 1, of the CBA provides general language requiring that

> all complaints, disputes, controversies, or grievances arising between the Employer and . . . [covered employees], *which involve[] only questions of interpretation or application of any provisions of this Agreement*, shall be adjusted and resolved . . . in the manner provided by this **ARTICLE, ARTICLE XI, GRIEVANCE AND ARBITRATION PROCEDURES.**[52]

Article XI, Section 2, also states "that time is of the essence in resolving disputes, controversies, or grievances which may arise between the Employer, Bargaining

---

[52] (Emphasis added).

Unit employees, and the Union *as it relates to interpretation or application of the provisions of this Agreement*."[53]  Article XI, Section 3, describes the three-step grievance procedure, and Section 4 describes the procedure to proceed to arbitration.

Under the plain language of the CBA, Article X, Section 2, requires that "disputes regarding disciplinary actions" shall be in accordance with Article XI, Section 1. And that provision plainly states that "complaints, disputes, controversies, or grievances" which involve "only questions of interpretation or application of any provisions of this Agreement" shall be resolved by way of the grievance and arbitration procedures.  So, the CBA only requires arbitration of any *contractual* disputes under the terms of the CBA regarding disciplinary actions.  Indeed, that is the most natural reading of the plain language of the CBA, given that nowhere does it reference any state or federal statutes dealing with employment discrimination.

AC&S asks us to assume that because the CBA requires Mr. George to use the grievance and arbitration procedure to resolve disputes over disciplinary matters (like termination), it necessarily requires statutory/common law claims on the same subject to be submitted to the grievance process.  *Jonites v. Exelon Corporation*[54] shows why that assumption is mistaken.  In *Jonites*, the Seventh Circuit Court of Appeals held that

---

[53] (Emphasis added).

[54] 522 F.3d 721 (7th Cir. 2008).

language in a CBA to the effect that "any dispute or difference aris[ing] between the Company and the Union or its members as to the interpretation or application of any of the provision of this Agreement or with respect to job working conditions" must be resolved through the contractual grievance procedure was not an "explicit" waiver of an employee's right to sue under the Fair Labor Standards Act.[55]  The court noted that this generalized language was little different from that at issue in *Wright*, where the Supreme Court had likewise concluded that there was no "clear and unmistakable" language in the CBA requiring claims under the ADA to be arbitrated.[56]

Articles X and XI of the CBA are no more specific than the provisions examined in *Jonites* and *Wright*.[57]  They mention no statute, they do not discuss individual statutory or common law discrimination claims, and there is no mention of waiver of a judicial forum.  The CBA does not include a "clear and unmistakable" waiver of Mr. George's right to a judicial forum to bring his employment discrimination claims.  To the contrary, the CBA explicitly excludes those claims when it provides that "complaints, disputes, controversies, or grievances . . . which involve[] only questions of interpretation

---

[55] *Id*. at 725.

[56] *Id*.; *see Wright*, 525 U.S. at 80-82.

[57] In *Wright*, the CBA's "arbitration clause [was] very general, providing for arbitration of '[m]atters under dispute,' . . . which could be understood to mean matters in dispute under the contract."  525 U.S. at 80.

21

or application of any provisions of this [CBA], shall be adjusted and resolved" by arbitration.

By contrast, the CBA's contractual language at issue in *14 Penn Plaza* explicitly incorporated a variety of statutory anti-discrimination provisions into the agreement and provided that "[a]ll such claims shall be subject to the grievance and arbitration procedure . . . as the sole and exclusive remedy for violations."[58] That language, the Supreme Court concluded, amounted to an explicitly-stated agreement to arbitrate statutory claims.[59] Unlike the explicit language examined by the Supreme Court in *14 Penn Plaza*,[60] the CBA here does not state that employees must submit statutory or common law discrimination causes of action to arbitration. For these reasons, the circuit court properly denied AC&S's motion to dismiss and to compel arbitration.

## C. Course of Conduct

Finally, AC&S argues that the circuit court erred when it failed to consider Mr. George's course of conduct when filing a grievance as evidence that he clearly and unmistakably understood that challenges to his termination raised in this lawsuit were subject to the CBA's grievance process and arbitration. Mr. George disagrees and states

---

[58] 556 U.S. at 252.

[59] *Id.* at 258-59.

[60] *See* note 42, *supra*.

22

that the broadest conclusion that can be drawn from his decision to file a grievance initially is that he intended to arbitrate contractual violations of the CBA. Mr. George has the better argument here because "[n]either historical practice nor the parties' unexpressed intent can fulfill" *Wright*'s "clear and unmistakable" waiver standard.[61]

More to the point, the fact that Mr. George filed a grievance seeking reinstatement is not, as AC&S asserts, any indication that he understood that he was bound to arbitrate his employment discrimination claims. Rather, when Mr. George filed his grievance, he relied on his substantive rights under the CBA. Mr. George has statutory/common law rights as well as contractual rights, and the circuit court appreciated the distinction between those categories of rights when it found that his decision to resort to the grievance procedure when seeking reinstatement did not impact his rights to seek redress of his employment discrimination claims in court. An employee is not required to choose between the rights provided by a CBA and the rights provided by statutes such as the West Virginia Human Rights Act; absent a clear and unmistakable waiver, the employee is entitled to both. So, AC&S is entitled to no relief in this regard.

---

[61] *Wawock v. CSI Elec. Contractors, Inc.*, 649 F. App'x 556, 559 (9th Cir. 2016) (citing *Wright*, 525 U.S. at 80).

23

## IV. CONCLUSION

For the reasons set out above, we affirm the order of the Circuit Court of Putnam County denying AC&S's motion to dismiss and to compel arbitration.

Affirmed.