In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2574

MONICA RICHARDS, individually and on behalf of all other similarly situated individuals,

*Plaintiff-Appellee*

*v.*

ELI LILLY & COMPANY and LILLY USA, LLC,

*Defendants-Appellants*.

Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. 1:23-cv-00242-TWP-MKK — **Tanya Walton Pratt**, *Judge*.

ARGUED JANUARY 28, 2025 — DECIDED AUGUST 5, 2025

Before HAMILTON, KIRSCH, and LEE, *Circuit Judges*.

KIRSCH, *Circuit Judge*. The Fair Labor Standards Act authorizes similarly situated employees to collectively sue employers for violations of the Act. 29 U.S.C. § 216(b). District courts take an active and early role in the management of these mass actions—commonly known as collective actions—including by issuing notice to potential plaintiffs so that they may opt to join the collective. At issue in this interlocutory

appeal is the showing necessary to procure this court-issued notice.

Absent meaningful guidance from the FLSA or higher courts, district courts have been left to fashion their own standards. Today, we clarify this area of the law and provide district courts in our circuit with a uniform, workable framework for assessing the propriety of notice to a proposed collective. As we explain in greater detail below, district courts must consider both parties' evidence with respect to similarity and may issue notice to potential plaintiffs when the named plaintiffs have raised at least a material factual dispute as to the similarity of potential plaintiffs.

## I

## A

To ensure broad and robust enforcement, the Fair Labor Standards Act of 1938 (FLSA) permits employees to bring so-called collective actions to sue employers for violations of the FLSA on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b). The Age Discrimination in Employment Act of 1967 (ADEA) incorporates this enforcement provision, permitting employees to band together in collective actions when suing an employer for age discrimination. *Id.* § 626(b); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167–68 (1989). The statutory text authorizing collective actions is sparse, however, and explains neither what it means to be similarly situated nor by what standard or at what stage in the proceedings courts must assess the similarity of the collective:

> An action … may be maintained against any employer … by any one or more employees for

> and in behalf of himself or themselves and other
> employees similarly situated. No employee
> shall be a party plaintiff to any such action un-
> less he gives his consent in writing to become
> such a party and such consent is filed in the
> court in which such action is brought.

29 U.S.C. § 216(b).

Collective actions are a unique enforcement mechanism. Though, at first blush, they resemble a Federal Rule of Civil Procedure 23 class action, the two actions are "fundamentally different" in practice. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013). In a class action for damages under Rule 23(b)(3), a named plaintiff represents the rights of absent non-party plaintiffs who will be bound by the disposition of the case unless they opt out of the class. See 7B Wright & Miller's Federal Practice and Procedure § 1807 (3d ed. 2005). As we stated in *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718 (7th Cir. 2024), collective actions are, by contrast, "a consolidation of individual cases, brought by individual plaintiffs." *Id.* at 726 (quotation omitted). Plaintiffs must affirmatively opt in to join a collective action. And unlike in a class action, each plaintiff who joins the collective enjoys full party status. See Wright & Miller, supra, § 1807.

"The twin goals of collective actions are enforcement and efficiency." *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). Litigating collectively furthers these goals by lowering the "individual costs to vindicate rights" and enabling common legal issues to be resolved in one fell swoop. *Hoffmann-La Roche*, 493 U.S. at 170. But due to their opt-in nature, the benefits of collective actions can only be effectively realized if other similarly situated employees are made aware of the

pending action. Acknowledging this fact, the Supreme Court has held that federal district courts may issue notice of a pending collective action to "potential plaintiffs" so that they may make "informed decisions about whether to participate." *Id.* at 169–70, 172–73. The Court declined, however, to define who qualifies as a potential plaintiff or what showing plaintiffs must make to secure notice, confirming "the existence of the trial court's discretion" to facilitate notice but "not the details of its exercise." *Id.* at 169–70.

With minimal guidance from Congress or the Court, district courts have largely been left to devise their own standards for facilitating notice to similarly situated employees. Over the last few decades, most district courts—including those in our circuit—have followed the *Lusardi* approach, which originated in a New Jersey district court. See *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987). Though it has many variations, *Lusardi* generally divides the management of a collective action into two steps.

At the first step, a plaintiff seeking notice to a proposed collective must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Strait v. Belcan Eng'g Grp.*, 911 F. Supp. 2d 709, 718 (N.D. Ill. 2012) (quotation omitted). A plaintiff's evidentiary burden at this stage is minimal, and many courts refuse to "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Iannotti v. Wood Grp. Mustang*, 603 F. Supp. 3d 649, 653 (S.D. Ill. 2022) (quotation omitted). Once a plaintiff makes this "modest" showing, the court issues notice to prospective plaintiffs, who may then opt in to the collective action by

filing written consent with the court. Occasionally, if significant discovery has already taken place, courts will impose a higher level of scrutiny—referred to as a "modest-plus" or "intermediate" standard—before issuing notice. See, e.g., *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012); *O'Neil v. Bloomin' Brands Inc.*, 707 F. Supp. 3d 768, 776 (N.D. Ill. 2023).

Step two occurs once opt-in and discovery are complete, at which point the defendant typically moves to challenge whether the collective is similarly situated. *Iannotti*, 603 F. Supp. 3d at 654. Now, with the benefit of more specific information about the collective's membership, the court engages in a more rigorous review to determine whether the plaintiffs are, in fact, similarly situated. If not, the individual plaintiffs' claims may be severed. See *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010) ("When a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs.").

*Lusardi*'s two steps are commonly but misleadingly referred to as conditional certification (step one) and decertification (step two). These stages are not to be confused with class certification under Rule 23, however. See *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) (rejecting the use of this terminology in the collective action context). Conditional certification does not produce a legal class or join any parties to the action. Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis*, 569 U.S. at 75. Thus, at step two, there is technically no collective to "decertify."

In recent years, *Lusardi*'s lenient notice standard has become the object of increasing scrutiny. Because most collective actions settle rather than proceed to trial, the issuance of notice, though it has no legal effect, carries significant practical implications for parties. For plaintiffs, broad and early notice helps to increase the size of the collective. This lowers costs, improves plaintiffs' bargaining position, and makes it easier to recruit suitable counsel. See *Hoffmann-La Roche*, 493 U.S. at 170. Expeditious notice is particularly important in FLSA cases. Under the FLSA, the statute of limitations is not automatically tolled to the date of the first filing for plaintiffs who have yet to opt in. 29 U.S.C. § 256(b). This means that delays in notice risk limiting or even running out the clock on putative plaintiffs' claims.[1] Notice also matters greatly to defendants, who worry that overly permissive notice standards will allow plaintiffs to artificially expand the size of a collective, "increas[ing] pressure to settle, no matter the action's merits." *Bigger*, 947 F.3d at 1049. Notice to employees who are ineligible to join a collective may also risk stirring up further litigation against an employer, especially if court-issued notice is perceived as an invitation for "those employees to bring suits of their own." *Clark*, 68 F.4th at 1010.

Consensus as to the proper standard for notice remains elusive. Several circuits have approved the use of some version of *Lusardi*'s two-step approach. See *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 681–83 (9th Cir.

---

[1] This issue is not present in ADEA collective actions, at least in this circuit, because we have interpreted the ADEA to permit opt-in plaintiffs to piggyback on the timely filed claim of the named plaintiff, so long as the named plaintiff alleges class-wide discrimination. See *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016–17 (7th Cir. 1988).

2025) (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1108–10 (9th Cir. 2018)) (holding that a district court did not abuse discretion by following the two-step process); *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (finding "no error" with a district court's choice to use the two-step approach); *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) (describing the two-step approach as "sensible" but not required); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (same).

Recently, two circuits have expressly rejected *Lusardi*'s modest notice standard in favor of a heightened burden of proof. The Fifth Circuit now holds that notice may only issue if, at the outset of the case, plaintiffs can demonstrate that notice recipients are "actually similar to the named plaintiffs," ostensibly by a preponderance of the evidence. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021). Taking a slightly different tack, the Sixth Circuit has concluded that notice may issue only where plaintiffs can show a "strong likelihood" that employees are similarly situated. *Clark*, 68 F.4th at 1011. Until now, our circuit has yet to directly address the issue.[2]

B

In 2022, Monica Richards applied for a promotion to become District Sales Manager for one of Eli Lilly's Boston-

---

[2] In *Bigger*, we passingly observed that while some courts in our circuit follow the *Lusardi* approach, we have never required it. 947 F.3d at 1049 n.5. Richards relies on language in *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428 (7th Cir. Sept. 1, 2021), to suggest that we have rejected critiques of *Lusardi*, but such non-precedential orders do not "constitute the law of the circuit." 7th Cir. R. 32.1(b).

based sales teams. A six-year veteran of the company in her early fifties, Richards had already been occupying the role on an interim basis for nearly six months. When the promotion was given instead to a much younger employee with less sales experience, Richards sued Eli Lilly & Company and Lilly USA, LLC, (collectively "Eli Lilly") in federal court, alleging age discrimination in violation of the ADEA, 29 U.S.C. § 621 et seq., and the Massachusetts Anti-Discrimination Law, Mass. Gen. Laws ch. 151B, § 4(1B) (2024).

On her ADEA claim, Richards moved to conditionally certify a collective action, asserting that the unfavorable treatment she experienced was part of a broader pattern of age discrimination against Eli Lilly's older employees. To alert other potential plaintiffs to her suit, Richards requested that the court send notice of the action to all "Eli Lilly employees who were 40 or older when they were denied promotions for which they were qualified, since February 12, 2022." The members of this proposed collective were similarly situated, Richards alleged, because they had all been plausibly harmed by a companywide initiative to support and retain "Early Career Professionals" (i.e., workers with less than two years of postgraduate experience) at the expense of older, more experienced employees.

Though the parties debated the appropriate standard for notice, the district court ultimately followed *Lusardi* and refused to consider Eli Lilly's evidence opposing the similarity of the proposed collective. Concluding that Richards had made the requisite modest factual showing, the district court conditionally certified the collective and agreed to issue notice. Recognizing, however, that we have not yet articulated a standard to govern the issuance of notice, the district court

certified the question for interlocutory review under 28 U.S.C. § 1292(b). The proper facilitation of a collective action is largely committed to a district court's case management discretion, see *Hoffmann-La Roche*, 493 U.S. at 170–73, and conditional certification is not a final appealable decision under 28 U.S.C. § 1291. Accordingly, we rarely review a district court's decision to issue notice. In light of the Fifth and Sixth Circuit's recent decisions rejecting *Lusardi*'s "modest showing" standard, we agreed to take this interlocutory appeal. This should not signal, however, that we intend to accept frequent interlocutory appeals from notice decisions or micromanage the notice process.

## II

We review a district court's decision to issue notice of a collective action for abuse of discretion but review the legal conclusions underlying that decision de novo. *Bigger*, 947 F.3d at 1048.

The time has come for us to offer clearer guidance on the proper facilitation of notice. As more courts have begun to question *Lusardi*, the standard for issuing notice in our circuit has begun to vary by court. See, e.g., *McColley v. Casey's Gen. Stores, Inc.*, 559 F. Supp. 3d 771, 776 (N.D. Ind. 2021) (observing that *Lusardi* "remains the dance of this circuit—a[t] least for the time being"); *Laverenz v. Pioneer Metal Finishing, LLC*, 746 F. Supp. 3d 602, 613–16 (E.D. Wis. 2024) (rejecting *Lusardi* and applying a preponderance of the evidence standard); *Fillipo v. Anthem Cos.*, No. 22-cv-00926, 2022 WL 18024818, at *2 (S.D. Ind. Dec. 30, 2022) (applying "the law of Rule 23 class certification" to evaluate whether conditional certification is appropriate). Such inconsistency leaves parties in the dark with respect to a critical aspect of the collective action process.

And if left unchecked, this disuniformity may eventually jeopardize broader principles of equal treatment, creating the appearance of a system that permits unpredictability and arbitrariness. See Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1182 (1989).

Richards resists, arguing that we cannot impose any uniform standard for notice because the management of collective actions is committed solely to the discretion of district courts. No doubt, district courts generally enjoy "wide discretion to manage collective actions." *Alvarez*, 605 F.3d at 449. And appellate courts cannot create prophylactic rules that "circumvent or supplement legal standards" set out by Congress or the Supreme Court. *United States v. Tsarnaev*, 595 U.S. 302, 314–16 (2022). But, here, there is no legal standard to displace. In *Hoffmann-La Roche*, the Court confronted only the "narrow question" of whether district courts may play "any role" at all in facilitating notice of a collective action. 493 U.S. at 169. Richards relies heavily on a single line from *Hoffmann-La Roche*: "We confirm the existence of the trial court's discretion, not the details of its exercise." *Id.* at 170. But this remark is hardly an express delegation of sole and open-ended authority to district courts. Indeed, even as it left the "details" of how notice is facilitated for another day, the Court emphasized that the district court's discretion with respect to notice is not "unbridled." *Id.* at 170, 174.

Imposing guardrails on the exercise of a district court's discretion is the normal business of appellate courts. When we review discretionary district court decisions, we typically do so deferentially but against defined legal standards. In the class action context, for example, we have concluded that the prerequisites for class certification must be proven by a

preponderance of the evidence, see *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012), even though Rule 23 confers "broad discretion" on district courts to determine whether certification is appropriate, *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (quotation omitted). More to the point, we have already outlined some contours of a district court's discretion to issue notice to a collective. See *Bigger*, 947 F.3d at 1050 (describing steps district courts must follow to investigate and resolve arbitrability disputes prior to issuing notice); *Woods v. N.Y. Life Ins.*, 686 F.2d 578, 580 (7th Cir. 1982) (holding that the district court's power to regulate notice does not include the power to forbid sending notice altogether). The issues presented in this case—who qualifies as a potential plaintiff under the FLSA, what evidence may be considered to make this showing, and the requisite burden of proof—are exactly the sorts of legal questions that ordinarily fall within our purview. Cf. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 779 (7th Cir. 2016) (a district court's decision to dismiss a case for misconduct is discretionary but "distinct from the standard of proof by which the underlying facts must be proven").

III

Having established the need for a uniform notice standard, we turn now to the task of defining that standard. Because the text of the FLSA is silent with respect to notice, our analysis begins with *Hoffmann-La Roche*, from which we extract three core principles to guide the proper facilitation of notice. The first is the importance of ensuring that notice is timely and accurate—otherwise, the Court cautioned, the benefits of collective actions cannot be effectively realized. *Hoffmann-La Roche*, 493 U.S. at 170–71. Second is the principle

of judicial neutrality: a district court's involvement in the no-
tice process must remain "distinguishable in form and func-
tion from the solicitation of claims," and courts must facilitate
notice in such a way as to "avoid even the appearance of judi-
cial endorsement of the merits of the action." *Id.* at 174. Third,
district courts must use their discretion to "govern[] the con-
duct of counsel and the parties" to prevent abuses and ensure
that the joinder of additional parties "is accomplished in an
efficient and proper way." *Id.* at 171–73 (quotations omitted).

Below, we consider the various notice standards proposed
by Richards and Eli Lilly. But because we find each incon-
sistent with the Court's instructions, in the end, we chart a
different path that more closely adheres to the principles con-
tained in *Hoffmann-La Roche*.

A

Richards argues that district courts should be permitted to
continue applying *Lusardi*'s modest notice standard. We rec-
ognize that the majority of district courts have opted to apply
*Lusardi*.[3] It is difficult to know, however, whether *Lusardi*'s
ubiquity reflects genuine consensus that it is "an effective
tool," *Hipp*, 252 F.3d at 1219, or is merely the product of inertia
or "anchoring bias," *Clark*, 68 F.4th at 1008 (quotation omit-
ted). Indeed, even as courts routinely employ the "modest" or
"modest-plus" standards from *Lusardi*, those standards have

---

[3] We don't, however, attribute significance to the fact that the Court
in *Hoffmann-La Roche* affirmed a lower court decision that followed *Lu-
sardi*. See *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 399 (D.N.J.
1988). *Hoffmann-La Roche* dealt only with the narrow question of whether
court-issued notice was permissible at all; the Court never discussed the
two-stage certification process nor considered whether *Lusardi* was a per-
missible exercise of the district court's discretion.

been repeatedly criticized as unclear and difficult to apply. See, e.g., *McColley*, 559 F. Supp. 3d at 775 ("The court has researched deeply the origins of the 'modest' and 'modest plus' standards but thus far has not found or been presented with a case that defines them."); *Swales*, 985 F.3d at 440 (describing *Lusardi* as an "amorphous and ad-hoc test [that] provides little help in guiding district courts in their notice-sending authority"). When the district court in this case certified Eli Lilly's interlocutory appeal, for instance, it noted that existing case law does not resolve "what scrutiny should apply … at conditional certification" nor "how the court should precisely define that scrutiny." *Richards v. Eli Lilly & Co.*, No. 1:23-cv-00242-TWP-MKK, 2024 WL 2126103, at *5 (S.D. Ind. May 10, 2024) (alteration in original) (quotations omitted).

Undoubtedly, *Lusardi*'s permissive notice standard has practical advantages. It enables courts to expeditiously send notice without weighing competing evidence, engaging in protracted discovery, or delving into difficult merits issues. But these rigid limits on what arguments and evidence courts may consider favor timely notice at the expense of both judicial discretion and neutrality. With their discretion curtailed at stage one, courts applying *Lusardi* must typically wait to sever a collective until after full opt-in and discovery are complete—even if the dissimilarity of the collective could have been readily established earlier. In such a case, issuing notice is deeply inefficient, inviting "futile attempts at joinder" that undermine judicial economy and unnecessarily increase litigation costs. *Bigger*, 947 F.3d at 1050.

A lenient and virtually unrebuttable notice showing also threatens judicial neutrality. Sending notice to plaintiffs who are ineligible to join the collective can generate significant

discovery costs, incentivizing defendants to settle early rather than attempt to "decertify" at step two. Such notice may also be seen as "solicitation of those employees to bring suits of their own," *Clark*, 68 F.4th at 1010, transforming what should be a neutral case management tool into a vehicle for strongarming settlements and soliciting claims. See *Swales*, 985 F.3d at 442. Because its overly permissive notice standard places "a judicial thumb on the plaintiff's side of the case," *Bigger*, 947 F.3d at 1050, we join the Fifth and Sixth Circuits in concluding that the modest level of scrutiny commonly employed under *Lusardi* inevitably conflicts with a district court's obligation to "maintain neutrality and to shield against abuse of the collective-action device," *id.* We do not, however, mean to cast doubt on the general proposition that a two-step approach to notice can be an appropriate exercise of a district court's discretion nor categorically disapprove every decision that permitted notice with a citation to *Lusardi*.

For its part, Eli Lilly argues we should adopt the Fifth Circuit's preponderance of the evidence approach, *Swales*, 985 F.3d at 434, or, at the very least, the Sixth Circuit's strong likelihood of similarity standard, *Clark*, 68 F.4th at 1011. We decline to do either.

Requiring plaintiffs to prove their similarity by a preponderance of the evidence to secure notice is unworkable and inconsistent with *Hoffmann-La Roche*. While some factual disputes about the similarity of a proposed collective may be definitively resolved prior to notice, others cannot be because the evidence necessary to establish similarity resides with yet-to-be-noticed plaintiffs. See *Clark*, 68 F.4th at 1010 ("[A]n employer's records might show that an employee worked less than 40 hours per week during a certain period; the employee

might be ready to testify that she worked more."). In such cases, this heightened requirement for notice functions as an insurmountable barrier for even meritorious collective actions. This result is incompatible with the Court's express instruction that the "broad remedial goal of the [FLSA] should be enforced to the full extent of its terms." *Hoffmann-La Roche*, 493 U.S. at 173.

Recognizing the impracticality of a preponderance of the evidence standard, the Sixth Circuit has endorsed a less demanding standard for notice: strong likelihood of similarity. *Clark*, 68 F.4th at 1011. But when relevant evidence of similarity is in the hands of individuals who are not yet parties to the action, we doubt that plaintiffs will be able to show a strong likelihood of similarity before notice any more than they would be able to show it by a preponderance of the evidence. Moreover, both heightened standards may foster delay and inefficiency, requiring courts to facilitate pre-notice discovery even when it's readily apparent that such discovery is unlikely to help resolve the factual dispute at hand.

Though the notice frameworks outlined in *Lusardi*, *Swales*, and *Clark* strike different compromises between timely notice and judicial neutrality, they share a common weakness: each imposes an inflexible notice standard that all but eliminates judicial discretion. In doing so, they not only disregard a core principle of *Hoffmann-La Roche* but also leave district courts ill-equipped to efficiently resolve the varied factual disputes that can arise when defining the scope of a collective action. In our view, *Hoffmann-La Roche* requires something different.

B

The plain text of the FLSA states that plaintiffs must be similarly situated if they are to proceed collectively. 29 U.S.C. § 216(b).[4] Accordingly, once opt-in is complete, it's sensible that plaintiffs bear the burden of moving to certify their collective action, at which point the court will assess whether plaintiffs are, in fact, similarly situated and may proceed collectively. And in the absence of statutory language dictating otherwise, we presume that plaintiffs must establish their similarity at the certification stage by a preponderance of the evidence. See *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025) ("Faced with silence, courts usually apply the default preponderance standard."). Indeed, we have applied this default standard to other procedural and case management decisions. See *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015) (noting that while we review class certification orders for abuse of discretion, the party seeking class certification "bears the burden of demonstrating that certification is proper by a preponderance of the evidence").

Whether a plaintiff can reasonably be expected to make this showing before notice, however, is a different question

---

[4] Though we have described the opt-in process in general terms as a "system of permissive joinder," *Vanegas*, 113 F.4th at 725 (quotations omitted), we agree with our sister circuits that the similarly situated requirement distinguishes a collective action from an ordinary multiparty suit achieved through Rule 20. See *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 96 (1st Cir. 2022) ("The FLSA's 'similarly situated' limitation for collective actions displaces Rule 20 and limits the range of individuals who may be added as opt-in plaintiffs by requiring that they be 'similarly situated.'"); *Scott v. Chipotle Mex. Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020); *Campbell*, 903 F.3d at 1112.

altogether and turns largely on the nature of plaintiffs' allegations. For example, if the common thread connecting plaintiffs' claims is an employer's informal policy of requiring work off the clock, it may be impossible to prove which employees were subject to that policy until opt-in plaintiffs are identified. See, e.g., *Smith v. Fam. Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012) (explaining that an official corporate policy on working hours might be rebutted by testimony from opt-in plaintiffs that they were ordered not to adhere to the policy). But, in other cases, it may be readily proven prior to notice that a challenged policy was limited in scope—for example, to only a particular type of worker or geographic location. See, e.g., *Jonites v. Exelon Corp.*, 522 F.3d 721, 725–26 (7th Cir. 2008) (describing a collective action as "hopelessly heterogeneous" where it included employees who did not work the day shift and thus had no conceivable claim based on the employer's daytime lunch policy).

With this in mind, we conclude that to secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated. By this, we mean that a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy. A plaintiff's evidence of similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence. We acknowledge that, at this stage, the relevant evidence will likely come in the form of affidavits and counter-affidavits, including those that a plaintiff may wish to submit after

seeing a defendant's rebuttal evidence. That's fine; courts routinely assess whether competing affidavits create a material factual dispute.

This threshold showing imposes a meaningful yet appropriate evidentiary burden on the plaintiff, reflecting both the preliminary stage of the proceedings and the practical significance of notice to both parties. A lower standard would permit notice based on little more than allegations, conflicting with the Court's warning against encouraging "the solicitation of claims." *Hoffmann-La Roche*, 493 U.S. at 174. By contrast, a substantially higher standard risks leaving some plaintiffs in limbo, unable to make the required showing without access to evidence held by individuals who are not yet parties to the case.

We stress, however, that a plaintiff is not automatically entitled to notice upon establishing the existence of a material dispute as to similarity. Once the district court is satisfied that there is at least a material dispute, the decision to issue notice will depend on its assessment of the factual dispute before it. And here, as *Hoffmann-La Roche* instructs, we rely on the sound discretion of the district court to facilitate notice in an efficient way that strikes an appropriate balance between timely notice and judicial neutrality.

If the district court is persuaded that the evidence necessary to resolve a similarity dispute is likely in the hands of yet-to-be-noticed plaintiffs, it may proceed with a two-step approach—that is, it may issue notice to the proposed collective while postponing the final determination as to whether plaintiffs are similarly situated until plaintiffs move for certification after opt-in and discovery are complete. Alternatively, if the court is confident that a similarity dispute can be

resolved by a preponderance of the evidence before notice, it may authorize limited and expedited discovery to make this determination and tailor (or deny) notice accordingly. This flexibility promotes efficient case management, enabling a district court to tailor its approach depending on the issues and complexities of the case before it.

This need not be an all-or-nothing determination. A district court might decide that a subset of issues relating to the similarly situated analysis are capable of definitive resolution and narrow the scope of notice accordingly, even as it recognizes that other disputes cannot be resolved until later in the proceedings. And if a plaintiff fails to produce evidence that establishes a material factual dispute, a district court might deny the motion for notice without prejudice, subject to possible reconsideration if the plaintiff comes forward with further evidence. The watchword here is flexibility, with respect for the principles outlined in *Hoffmann-La Roche* and the remedial goals of the FLSA and ADEA.

This framework is consistent with *Bigger*, in which we held that courts may not issue notice to an employee if a defendant can show that a valid arbitration agreement bars the employee from participating in the action. 947 F.3d at 1050. As *Bigger* recognizes, whether some members of a proposed collective are bound by arbitration agreements is the type of factual dispute that can be readily resolved prior to notice and opt-in. Our decision today builds on this logic and empowers courts to recognize other similarity disputes that can likewise be resolved swiftly and conclusively before notice.

When district courts do decide to authorize pre-notice discovery, we trust that they will carefully supervise this process

to prevent abuses and unnecessary delay.[5] And while such discovery should be conducted expeditiously, we are mindful that even minimal pre-notice discovery risks running out the clock on putative plaintiffs' FLSA claims. To that end, district courts should decide as soon as practicable whether notice is appropriate and are empowered to use their equitable tolling authority to ensure that plaintiffs are not unfairly disadvantaged by any delays in discovery. See *Clark*, 68 F.4th at 1014 (Bush, J., concurring) ("Equitable considerations support the use of tolling for FLSA collective actions."). Indeed, the equitable tolling of FLSA claims is already a familiar practice in our circuit, see, e.g., *Iannotti*, 603 F. Supp. 3d at 657; *Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F. Supp. 3d 784, 799 (N.D. Ind. 2020), and that is a fair and appropriate measure, especially while disputes about notice are being resolved.

Finally, we caution that this pre-notice discovery should remain narrowly tailored to the similarly situated inquiry— in other words, to the question of whether common issues of fact or law make it more efficient to resolve plaintiffs' claims together. This inquiry should not devolve into an early adjudication of the merits. That said, courts need not refuse to consider merits issues altogether. Some factual disputes about similarity inevitably overlap with merits issues. A defendant might, for example, present evidence that the proposed

---

[5] And, of course, even after notice and opt-in are complete, a district court retains broad discretion with respect to the scope of discovery. Because a collective action might comprise tens, hundreds, or even thousands of opt-in plaintiffs, a district court's discretion includes carefully delimiting any additional discovery mindful of its obligation under Federal Rule of Civil Procedure 1 to "secure the just, speedy, and inexpensive determination" of the action and the "twin goals of collective actions … enforcement and efficiency." *Bigger*, 947 F.3d at 1049.

collective includes employees who are exempt from FLSA protections. If true, this fact would certainly affect the merits of those plaintiffs' claims. But it is also directly relevant to assessing whether the collective is similarity situated—that is, "whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims" such that "collective litigation would yield 'efficient resolution in one proceeding.'" *Clark*, 68 F.4th at 1012 (quoting *Hoffmann-La Roche*, 493 U.S. at 170). Accordingly, a district court need not ignore evidence of dissimilarity at the pre-notice stage simply because it touches on a merits issue. Rather, it is for the district court to decide whether and to what extent a particular merits question affects the similarly situated analysis.

*        *        *

Our decision today realigns the issuance of notice in our circuit with the core principles of *Hoffmann-La Roche*. It recognizes the need for workable standards to guide district courts in the process of issuing such notice and empowers them to use their discretion to strike the proper balance between timely notice and judicial neutrality. Because the district court below did not have the opportunity to evaluate the propriety of notice under the framework we adopt today, we vacate and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED

HAMILTON, *Circuit Judge,* concurring in part and concurring in the judgment. I am pleased to join almost all of Judge Kirsch's opinion for the court. His opinion provides important and appropriate guidance for issuing notice to people who may be situated similarly to lead plaintiffs and who may have similar claims under the FLSA or ADEA. His opinion also preserves important flexibility and discretion for district judges in managing these cases.

My only point of disagreement is with the paragraph on page 16 addressing what happens after notice is issued in FLSA or ADEA cases to people who may be similarly situated to the lead plaintiff. The draft opines without citing relevant authority (a) that the plaintiff bears the burden of moving to "certify" a collective action and (b) that similarity must be proven by a preponderance of the evidence. We would do better not to opine on either point in this case, where this passage amounts to *obiter dictum*.

Neither question is actually presented in this narrow interlocutory appeal. We agreed to review only the standard for issuing notice in the first place. And the majority's answers to these two extra questions may not be correct. They seem to me a little too close to the Rule 23 process and standard for certifying a true class action.

As I see it, proceeding in a collective action may be better understood as closer to presenting Rule 20 or 21 questions of permissive joinder or misjoinder or Rule 42 questions of consolidation of cases for trial. The Supreme Court has twice described § 216(b) as a "joinder process." See *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 70 n.1 (2013); *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 – 71 (1989) (district court has "managerial responsibility to oversee the joinder of

additional parties"). This court and other circuits have used the same characterization. E.g., *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 725 (7th Cir. 2024) ("Congress chose to 'create a system of permissive joinder rather than creating so-called class actions.'" (internal quotation marks omitted)), quoting *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 379 (3d Cir. 2022); *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010) (whether FLSA plaintiffs are "permitted to pursue their claims in one action or several is committed to the sound discretion of the district court, but misjoinder of parties is never a ground for dismissing an action"), citing Fed. R. Civ. P. 21; see also *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 96 (1st Cir. 2022) ("The FLSA's 'similarly situated' limitation for collective actions displaces Rule 20 and limits the range of individuals who may be added as opt-in plaintiffs by requiring that they be 'similarly situated.'"); *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) ("[T]he FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial."), quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1112 (9th Cir. 2018); *Campbell*, 903 F.3d at 1104–05 ("The natural parallel [with opt-in plaintiffs] is to plaintiffs initially named or later added under the ordinary rules of party joinder.").

If a district court decides to exercise its authority under *Hoffman-La Roche* to send notice to potential plaintiffs, those plaintiffs may opt into the case by filing notices with the court. Merely filing those notices makes them parties to the case. See 29 U.S.C. § 216(b) (employee becomes "party plaintiff" when he files written consent "in the court in which [the] action is brought"). That becomes the status quo, and it would

ordinarily require a motion (by the defendant) to change that status, though the court could also act on its own initiative. The remedy, as the panel notes, should be severance—allowing the actions to continue, albeit individually or perhaps in smaller sub-groups.

Further, being similarly situated is not an element in a plaintiff's case that must be proven by a preponderance of the evidence. It is only an issue of joinder or consolidation, which are matters of case management. That's consistent with our and other courts' decisions holding that FLSA and ADEA collective actions are not "representative" actions. E.g., *Vanegas*, 113 F.4th at 723 (collective actions are just amalgamations of parties, requiring personal jurisdiction over each plaintiff); *Canaday v. Anthem Cos.*, 9 F.4th 392, 402 (6th Cir. 2021) ("A Rule 23 class action is representative, while a collective action under the FLSA is not."); *Campbell*, 903 F.3d at 1105 ("A collective action, on the other hand, is not a comparable form of representative action. Just the opposite: Congress added the FLSA's opt-in requirement with the express purpose of 'bann[ing]' such actions under the FLSA. … A collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases—capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree."). It's also consistent with the Supreme Court's emphasis in *Hoffmann-La Roche* that the collective action mechanism is designed to benefit the judicial system through "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." 493 U.S. at 170.

We review Rule 20 decisions granting or denying permissive joinder with a deferential standard, abuse of discretion. E.g., *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863–64 (7th Cir. 2018). To my knowledge this court has never said one side or the other bears a burden of going forward or persuading on those questions. We have left those matters to the discretion of the district court to choose a process and to answer the case-management question. Those decisions will most often be based on factors that have more to do with efficiency, fairness, and expense than with disputed issues of material fact. See 7 Wright, Miller & Kane, Federal Practice & Procedure § 1653 at 435 (2019) ("language in a number of decisions suggests that the courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court"); *Eclipse Mfg. Co. v. M and M Rental Center, Inc.*, 521 F. Supp. 2d 739, 744 (N.D. Ill. 2007); see also 9A Wright, Miller & Kane § 2383, 26 ("consolidation of separate actions presenting a common issue of law or fact is permitted under Federal Rule 42 as a matter of convenience and economy in judicial administration"). That should be the case for § 216(b) actions too. Whether the claims proceed to trial on a collective basis should depend on a case-specific determination of whether plaintiffs are sufficiently similarly such that their claims could be more efficiently resolved together.

Accordingly, with respect for my colleagues' different views, I would leave open the burden of moving forward and the burden of persuasion and save those issues for an FLSA or ADEA appeal where the answers would make a difference.